**ROHRBACHER, Appellee,**

v.

**ROHRBACHER, Appellant.**

[Cite as *Rohrbacher v. Rohrbacher* (1992), 83 Ohio App.3d 569.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–010.

Decided Nov. 13, 1992.

*Richard Shinaberry*, for appellee.

*Kevin Heban*, for appellant.

*Per Curiam.*

This is an appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division.

The marriage of appellant, Jack B. Rohrbacher, and appellee, Joan K. Rohrbacher, was dissolved by decree on June 1, 1977. Pursuant to a separation agreement, incorporated into the decree of dissolution, appellee was awarded custody of the parties' two minor children, Chad, born January 10, 1972, and Amy, born September 20, 1976. Part 3 of the separation agreement specifies the amount of child support to be paid by appellant and its duration. The relevant portion of Part 3 provides:

"C. Husband agrees to continue the payments required under the above paragraphs A. and B. through age twenty-two (22) so long as Chad and Amy are still pursuing college educations or the substantial equivalent thereof. In addition to the above payment, husband agrees to pay to wife for the sole benefit of said children such sum as may be needed to provide said children with a college education or the substantial equivalent thereof through age twenty-two (22).

Husband's obligation, however, shall be based upon education costs then being charged in the Mid–American Conference and shall not be obliged to exceed average costs in said institutions.

"D. Reaching the age of majority, entry into military service or emancipation in any other way shall eliminate any future obligation on the part of husband with respect to said children, except that reaching the age of majority, by itself, shall not eliminate the requirement to provide a college education or substantial equivalent thereof. 'College Education' shall mean full time enrollment at the undergraduate level in an accredited institution. The term 'substantial equivalent thereof' shall mean full time enrollment in accredited post high school programs such as those provided by the University of Toledo Community and Technical College and the Michael J. Owens Technical College, for example."

Payment of the children's medical expenses is governed by a separate clause of the separation agreement and states:

"4. Through her employment wife shall include the children as beneficiaries of hospitalization and medical coverage provided by her employer, Ohio Bell Telephone Company. Such coverage shall be maintained at all times for the children of the parties so long as they are otherwise eligible to be covered. In connection with and in addition thereto, but without duplication of payment, husband agrees to reimburse wife for all of the children's extraordinary medical, dental, optical, orthodontic, surgical and hospital expenses. Reimbursement shall be made promptly upon submission of valid statement from wife to husband."

On September 11, 1990, appellee filed a motion requesting that appellant show cause for his failure to comply with the child support provisions of the separation agreement. Appellee further asked for a modification of child support, attorney fees and costs. Appellant subsequently filed a motion to decrease the amount of child support and to eliminate college tuition payments for Chad because Chad received "scholarships" which fully paid for his education.

At a hearing on this matter, held before a referee, the following pertinent facts were adduced.

Appellee now resides in Columbus, Ohio, with her two children, Chad and Amy. As of June 1989, appellee suspected that Chad had a problem of some kind, possibly with drugs. On August 20, 1989, the police called appellee and informed her that Chad was being held because drug paraphernalia were found in the automobile in which he was a passenger. As a result of this incident, appellee learned that Chad was addicted to cocaine. On August 21, 1989, appellee had Chad admitted to "Campus," a drug rehabilitation program involving an initial sixty days of inpatient treatment and subsequent outpatient treatment. Appellee called appellant on the day that Chad was admitted, informed him of the problem

and of the steps taken to address that problem. It is undisputed that appellant drove to Columbus and participated in family counseling sessions while Chad was receiving inpatient drug treatment.

After his release from inpatient treatment, Chad continued to see a psychologist who worked with teenagers recovering from drug addiction. Over the next several months, Chad experienced three "relapses," ongoing psychological difficulties and physical problems which his mother claimed were linked to his cocaine addiction. Despite his problems, Chad graduated from high school in June 1990 and enrolled at Otterbein College. On January 28, 1991, Chad moved out of appellee's home and into an apartment. At that time, he was twenty years old, attending Otterbein College full time and working thirty hours per week for a wage of $5 per hour. Chad's tuition at Otterbein College is $3,365 per quarter or $10,095 per year (excluding summer session). Appellee paid a total of $335 for books for the first and second quarters. The parties stipulated that the cost of tuition per year at the University of Toledo, a Mid–American Conference school, was, at the time of the hearing, $2,526 per year (excluding books and summer session). The parties further agreed that a portion of Chad's tuition at Otterbein College was financed by means of grants and loans. The sum of these grants and loans equalled $8,512.

In his report and recommendation, the referee concluded that Chad was emancipated as of January 28, 1991 and that, therefore, appellant's weekly child support obligation for Chad ended on that date. However, the referee further determined that appellant was bound by the separation agreement to pay the amount of college tuition set forth therein and to pay the unreimbursed medical expenses. The referee recommended that appellee be awarded a lump-sum judgment in the amount of $5,117.76 to cover due and owing college expenses and medical expenses and that appellant be ordered to pay tuition directly to the college in the future. The referee also recommended that appellant be found in contempt of court for failure to comply with the decree of dissolution and that he pay a $250 fine unless purged of the contempt by paying appellee the lump-sum judgment within sixty days of entry of the trial court's judgment. Additionally, the referee concluded that appellant should pay attorney fees ($300) and court costs ($30). Finally, the referee recommended a modification of the amount of child support per week for Amy and Chad based upon appellant's yearly gross income of $25,000 and appellee's yearly gross income of $33,000. This amount was ordered to be paid retroactive to September 11, 1990.

Appellant filed timely objections to the referee's report. On December 3, 1991, the trial court overruled these objections and affirmed and adopted the referee's report. In its judgment entry, the domestic relations court held:

"The record is clear. The judgment [decree of dissolution] is clear—there was no agreement for the Plaintiff [appellee] to pay these college expenses. That was the *sole* obligation of the Defendant [appellant]."

Appellant alleges that the following enumerated errors occurred in the proceeding below:

"I. The trial court erred in ordering the defendant-appellant to be responsible for all of the medical expenses associated with the minor child's detoxification program.

"II. The trial court erred in finding that the defendant-appellant was liable for the college tuition and associated expenses for the minor child.

"III. The trial court erred in finding the defendant-appellant in contempt of court."

Appellant's second assignment of error shall be addressed first. In that assignment, appellant maintains, in essence, that the trial court erred in failing to modify those provisions of the separation agreement which require appellant to pay college expenses for his children. Appellant asserts that the domestic relations court abused its discretion by failing to apportion these costs between the parties. Appellant further contends that, under the separation agreement, he is not responsible for any of Chad's college expenses after January 28, 1991, the date that the court deemed Chad to be emancipated for the purpose of child support.

The central question in this assignment of error is whether the domestic relations court had the requisite jurisdiction to modify the provisions in the separation agreement pertaining to Chad's college expenses.

In a dissolution proceeding, the separation agreement formulated by the parties and incorporated into the decree of dissolution must provide for a division of marital property, spousal support, child custody and visitation and child support. R.C. 3105.63. Certain provisions of the separation agreement, *e.g.*, periodic alimony payments, cannot be modified by a court after the agreement is merged into the decree of dissolution. *McClain v. McClain* (1984), 15 Ohio St.3d 289, 15 OBR 421, 473 N.E.2d 811. Thus, a trial court is said to lack jurisdiction to modify such a provision. *Id.* Nevertheless, R.C. 3105.65(B) expressly grants the court full power and jurisdiction to enforce and/or modify the terms in a separation agreement which relate to matters of child custody, child support and visitation. Thus, appellant reasons that an agreement to pay college expenses, as a form of child support, is modifiable upon the motion of a party. Under the facts of this case, we must disagree.

First, R.C. 3105.65(B) is applicable only during a child's minority. A court is without jurisdiction to order a parent to support a child when that child reaches the age of majority and is not attending an accredited high school on a full-time basis. *Maphet v. Heiselman* (1984), 13 Ohio App.3d 278, 279, 13 OBR 343, 344, 469 N.E.2d 92, 94. That is, the court loses its jurisdiction over the child. *Miller v. Miller* (1951), 154 Ohio St. 530, 43 O.O. 496, 97 N.E.2d 213. Nonetheless, parents can provide for the support of their child beyond the age of majority by means of a separation agreement. *Nokes v. Nokes* (1976), 47 Ohio St.2d 1, 1 O.O.3d 1, 351 N.E.2d 174; *Maphet, supra.* When that separation agreement is incorporated into a decree of divorce or dissolution, it merges into the decree and is thereafter only enforceable as an order of that court. *Wolfinger v. Ocke* (1991), 72 Ohio App.3d 193, 198, 594 N.E.2d 139, 142; *Bugay v. Bugay* (1977), 53 Ohio App.2d 285, 7 O.O.3d 336, 373 N.E.2d 1263. Based on the foregoing, we conclude that during a child's minority a domestic relations court has the jurisdiction to alter the provisions of its decree which relate to the college education of that child upon proper motion of or by consent of the parties. See, *e.g., Wolfinger, supra,* 72 Ohio App.3d at 197–198, 594 N.E.2d at 141–142. However, once the child attains the age of majority as set forth in R.C. 3109.01, the court is without the jurisdiction to modify those provisions without the consent of the third-party beneficiary—the child of the parties. *Wolfinger, supra,* at 198–199, 594 N.E.2d at 142. In such a case, the court is limited to the enforcement of those provisions through its continuing jurisdiction over the parties to the separation agreement. *Grant v. Grant* (1977), 60 Ohio App.2d 277, 282, 14 O.O.3d 249, 252, 396 N.E.2d 1037, 1041. See, also, R.C. 3105.10(B). In the case at bar, the original order of the court issued in 1977 was never modified. Appellant did not request modification until after Chad reached the age of majority. Accordingly, the lower court's role was limited to the enforcement of the relevant portions of its order. In enforcing that order, the trial court was required to construe the terms of the separation agreement in order to effectuate the intent of the parties. *Forstner v. Forstner* (1990), 68 Ohio App.3d 367, 372, 588 N.E.2d 285, 288. Where the terms of a clause are confusing or ambiguous, the court is accorded broad discretion in the clarification of those terms and can resolve the dispute by considering not only the intent of the parties but also the equities involved. *In re Dissolution of the Marriage of Seders* (1987), 42 Ohio App.3d 155, 536 N.E.2d 1190.

Part 3, Paragraph C is unequivocal in stating that appellant is obligated to pay the college education costs of Chad (based upon costs charged in the Mid–American Conference) through age twenty-two. Part 3, Paragraph D defines "college education" as full-time enrollment at the undergraduate level in an accredited institution. Appellant does not dispute the fact that Chad's enrollment at Otterbein College satisfies this definition. Rather, he argues that the first sentence of Part 3, Paragraph D controls and that, because Chad was determined

to be emancipated for the purpose of the termination of appellant's child support obligation, that emancipation relieves appellant of the obligation to pay Chad's college expenses.

The first sentence in Part 3, Paragraph D is confusing in that it is in direct conflict with Part 3, Paragraph C. It appears to deprive Chad and Amy of support beyond the age of majority which is afforded in Part 3, Paragraph C. For this reason the court below was required to interpret the provisions and clarify them. We cannot say that, in consideration of the intent of the parties and the equities in this case, the court's interpretation is an abuse of its discretion. Appellant's second assignment of error is found not well taken.

In his first assignment of error, appellant contends that the trial court abused its discretion by failing to apportion Chad's medical expenses between the parties.

Medical expenses are child support. R.C. 3109.05. Accordingly, unless a separation agreement incorporated into a decree of divorce or dissolution provides that a parent is obligated to pay a child's medical expenses beyond the age of majority, that obligation ceases at the time the child attains the age of majority and is not enrolled full-time in an accredited high school. Chad reached this status on January 10, 1990, his eighteenth birthday. Testimony at trial disclosed that, although he did not receive his diploma until June 1990, Chad possessed the necessary number of credits to graduate by January 1990 and did not attend high school after that point. That provision of the separation agreement, Part 4, is separate and distinct from Part 3. Part 4 does not provide for payment of medical expenses beyond the age of majority and is not, in any way, mentioned in Part 3. We, therefore, find that the trial court abused its discretion in finding appellant responsible for any of Chad's medical expenses after January 10, 1990. Nevertheless, Part 4 of the separation agreement clearly imposes a duty upon appellant to reimburse appellee for the children's extraordinary medical expenses. Therefore, appellant is obligated to reimburse appellee for Chad's medical expenses incurred through January 9, 1990. Appellant's first assignment of error is found well taken, in part, and not well taken, in part.

In his third assignment of error, appellant maintains that the trial court could not find him in contempt for failing to notify appellee of his annual income as required by the terms of the separation agreement or for his failure to pay due and owing college expenses and medical expenses. Specifically, appellant asserts that no evidence was offered on the issue of whether he failed to notify appellee of his annual income and that his motion to modify the medical and college expense provisions, filed two months after the initiation of the contempt proceeding, somehow barred the court from finding him in contempt for an admitted

failure to comply with a court order. Appellant also contends that it was not in his power to obey the court order because of a lack of funds.

We must agree with appellant's first proposition. There is simply no evidence in the record of this case to support a contempt finding on the issue of whether appellant failed to notify appellee of his annual income. The lower court's judgment is, however, also based upon appellant's failure to pay Chad's medical and college expenses. Appellant admitted that he failed to comply with the court's order regarding these expenses and filed a motion to modify only after the contempt proceeding was instituted by appellee. As noted in *Forstner, supra,* 68 Ohio App.3d at 373–374, 588 N.E.2d at 289, the obligor cannot decide that the terms of a separation agreement are ambiguous or inapplicable and simply refuse to fulfill the obligation. He must take some affirmative action either prior to or at the time his obligation arises. Appellant's motion to modify was, therefore, not a viable defense to the contempt proceeding.

As to appellant's "defense" of inability to pay, the burden was upon him, by allegations and proof, to establish this inability. *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140, 15 OBR 285, 288, 472 N.E.2d 1085, 1088, citing *State ex rel. Cook v. Cook* (1902), 66 Ohio St. 566, 64 N.E. 567, paragraph one of the syllabus. Appellant offered no evidence of an inability to pay either the college expenses or the medical expenses. The only evidence before the court was that appellant made $25,000 per year in wages and that he was in the course of selling his home for an estimated $48,000. For this reason, we reject any notion that appellant demonstrated his inability to pay the ordered expenses. Therefore, the trial court did not abuse its discretion in finding appellant in contempt of court.

On consideration whereof, this court affirms the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, in part, and reverses the judgment of that court, in part. This cause is remanded to that court for a determination of the amount of medical expenses owed by appellant under the separation agreement. Cost of this appeal are to be split equally between the parties.

*Judgment accordingly.*

HANDWORK, MELVIN L. RESNICK and SHERCK, JJ., concur.