OPINION
Appellant, Martin Svette, appeals the judgment of the Geauga County Court of Common Pleas concerning the application of his separation agreement with appellee, Jane M. Svette.
Appellant and appellee were granted a dissolution of marriage on January 10, 1983. At that time, the parties had three children born as issue of their marriage: Mark, Sara, and Christy. As part of their separation agreement, each party agreed to contribute funds covering the full cost of any college education and additional schooling expenses of each child, unless they jointly decided to provide less than full funding. The separation agreement also stated that appellee agreed to sell the marital residence and divide the net proceeds with appellant in such a manner that she receive seventy-five percent of the net proceeds while he receive the remaining twenty-five percent. The separation agreement further stated that appellee was required to sell the marital residence, provided that appellee had a right of first refusal in sale of the premises, when either of the following occurs: (1) the youngest child of the marriage attains the age of majority; (2) appellee remarries, dies, or lives in an unmarried state of cohabitation; or (3) appellee vacates and sells the marital residence.
In the fall of 1994, appellee raised the issue with appellant of buying out his share in the marital residence. In a letter dated October 24, 1994, appellee notified appellant of an appraisal she had obtained on the property and inquired about whether he wished to have another appraisal, which appellant did not request. The house was appraised at $136,000. Appellee sent appellant a letter dated December 20, 1994, in which she offered to purchase his share based on the appraisal minus the outstanding mortgage principal, which was $36,615.58. In a letter dated January 5, 1995, appellant agreed to the buyout offer. On January 18, 1995, appellant was issued a check in the amount of $24,846.10 for the buyout of his twenty-five percent interest.
Within six months of sending the buyout check to appellant, appellee subdivided the marital property lot, retained an unimproved lot for herself, and sold the remaining property for $185,000. The record indicates that appellee made repairs to the marital property after purchasing it from appellant and before its sale, but appellee presented no receipts, bills, contracts, canceled checks, or other documentation to substantiate her claim that she spent approximately $33,000 for improvements.
In June 1996, appellee and appellant signed a written agreement that "each [will] pay one-half of the cost of tuition, room and board, and classroom materials for our daughters, Christy and Sara Svette * * * universities of their choice." However, the written agreement was not submitted to the court for its inclusion into the separation agreement, and there was no court order obligating appellant to pay one-half of the college expenses of his daughters. During the 1996-1997 academic year, appellee paid a total of $30,339 for the college expenses for her daughters. The record shows that appellant contributed $1,500 to his daughters' education.
On February 28, 1997, appellee filed a motion to show cause why appellant should not be found in contempt of court due to his failure to pay one-half of his daughters' educational expenses despite her demand for payment. In that motion, appellee requested the trial court to: (1) hold appellant in contempt for his refusal to pay his share of the college expenses, (2) order appellant to pay the expenses plus interest at the legal rate, and (3) award her attorney fees for expenses incurred in litigating this matter.
On April 23, 1997, appellant filed his answer, a motion to show cause, and a motion to modify the separation agreement. In the motion to show cause, appellant requested the trial court to: (1) value the marital property at $221,400, which was its value after being subdivided and sold by appellee in 1995; (2) order appellee to pay him an additional $21,350, plus interest, for his twenty-five percent share in the marital property as so valued; (3) hold appellee in contempt for failing to pay him his full share of the value of the property; and (4) award attorney fees and expenses incurred in this matter. In the motion to modify the separation agreement, appellant requested that in the event the trial court determines that he had agreed to pay one-half of his daughters' educational expenses, that the court modify such agreement on the basis that he does not have enough funds to pay nearly $16,000 per year and never anticipated that his children would have chosen such expensive colleges to attend.
The trial judge referred the matter to a magistrate to hold a hearing on all motions. The hearing was held beginning on August 1, 1997. In a decision dated May 19, 1998, the magistrate determined that appellant had entered into an enforceable agreement to pay one-half of his daughters' college fees, and therefore, he should make such contribution. The magistrate also concluded that the value of the marital property at the time of the buyout was $184,784.42, after accounting for the outstanding mortgage principal. Thus, the magistrate stated that appellee owed appellant an additional $21,347 to account for the increased property value. Further, neither party was awarded attorney fees nor held in contempt.
On July 2, 1998, the trial court filed a judgment entry modifying the magistrate's decision without having held any hearing. In that judgment entry, the trial court held appellant in contempt for failing to properly contribute to his daughters' college expenses on the basis that the original separation agreement clearly stated that each party must provide funding to cover the full cost of their education. The court decided that the $1,500 appellant had paid did not comply with the separation agreement. However, no sanctions were imposed on the finding of contempt. The court also held that appellant's later agreement with appellee to pay one-half of college expenses was valid and enforceable. Accordingly, appellant was ordered to pay appellee the sum of $13,669.50 plus interest at the rate of ten percent per annum beginning on February 26, 1997.
In regard to appellant's motion to modify the separation agreement, the court determined that he chose not to address this issue because it noted that the magistrate failed to address that issue and appellant did not file any objections on that point. Importantly, the court determined that there was no fraud, misrepresentation, or concealment by appellee in procuring appellant's sale of his portion of the marital property. Thus, appellee had paid appellant the full amount owed for obtaining his twenty-five percent share. Also, the trial judge ruled that appellee was entitled to an award of $3,000 in attorney fees and expenses for prosecuting her motion to show cause. Hence, appellant was ordered to pay the sum of $3,000 plus interest at the rate of ten percent per annum from February 26, 1997.
On July 27, 1998, appellant timely filed a notice of appeal, now asserting the following assignments of error:
 "[1.] The trial court erred to the prejudice of [a]ppellant in holding, against the manifest weight of the evidence, that [a]ppellee did not misrepresent the value of the Bell property thereby rejecting the magistrate's decision that [a]ppellant is due an additional $21,347 for his interest therein * * *.
 "[2.] The trial court erred to the prejudice of [a]ppellant in holding that the parties' subsequent agreement (hereafter the June 1996 agreement) is a valid and enforceable agreement * * *.
 "[3.] The trial court erred to the prejudice of [a]ppellant in holding [a]ppellant in contempt and imposing contempt sanctions for non-compliance with a separation agreement provision which is vague and ambiguous * * *.
 "[4.] The trial court's judgment against [a]ppellant in the amount of $13,669.50, plus interest at 10% per annum from February 26, 1997, is against the manifest weight of the evidence and contrary to law * * *."
 In the first assignment of error, appellant contends that appellee committed an act of fraudulent misrepresentation by failing to disclose the value of the marital property if subdivided. Appellant further claims that the magistrate determined that appellee made misrepresentations, which he argues the trial court reversed, and which were against the manifest weight of the evidence.
At the outset, we note that the magistrate never made any findings that appellee's actions were fraudulent or that she made any misrepresentations to appellant. Rather, the magistrate only determined that appellee's statement that she had not formulated any plans to subdivide the marital property at the time of issuing a check to appellant was unbelievable. The magistrate's finding does not bolster appellant's claim that appellee fraudulently misrepresented the value of the marital property.
The elements of fraudulent misrepresentation are: (1) a representation or concealment of a fact when there is a duty to disclose; (2) material to the transaction; (3) made falsely, with knowledge of its falsity, or with utter disregard and recklessness regarding its truth or falsity; (4) with the intent to mislead another into reliance; (5) justifiable reliance on the representation or concealment; and (6) injury results proximately from such reliance. Burr v. Bd. of Cty. Commrs. of Stark Cty.
(1986), 23 Ohio St.3d 69, paragraph two of the syllabus.
In Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226, the Supreme Court articulated the standard of review to be employed in a manifest weight inquiry:
 "[J]udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, * * * syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77 * * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross
(1980), 64 Ohio St.2d 203 * * *." (Parallel citations omitted.)
In the instant matter, we will limit our discussion to addressing the third element of fraudulent misrepresentation because such analysis is dispositive of appellant's first assignment of error. In order to successfully establish fraudulent misrepresentation, appellant must show that appellee's statement concerning the value of the marital property was made falsely, with knowledge of its falsity, or with utter disregard and recklessness regarding its truth or falsity.
The record reveals that at the time appellee offered to buy out appellant's twenty-five percent share in the proceeds of the marital property, she had obtained an appraisal that it was worth $136,000. In addition, appellant was afforded ample opportunity to verify the appraisal, but freely chose not to do so. While the evidence indicates that appellee may have been interested in subdividing the property as early as December 19, 1994, there is no evidence indicating that at that time appellee knew the property was worth more than the appraisal quote. In addition, not until months later was the property actually subdivided and sold at an increased amount. Furthermore, appellee presented evidence indicating that she had spent several thousands of dollars making improvements before the date of sale. Finally, referring to the time of the buyout offer, no evidence was presented indicating that appellee knew that she would be legally able to subdivide such property.
Accordingly, based on the evidence presented, we cannot conclude that appellee's statement concerning the value of the marital property was made falsely or that she improperly concealed pertinent marketing information from appellant, with knowledge of its falsity, or with utter disregard and recklessness regarding its truth or falsity. Therefore, appellant has failed to demonstrate that the trial court's judgment was against the manifest weight of the evidence. Consequently, appellant's first assignment of error is not well-taken.
In the second assignment of error, appellant argues that the trial court erred in holding that the agreement to pay one-half of his daughters' expenses was valid and enforceable because there was no meeting of the minds and a private agreement to modify a separation agreement is invalid.
Civ.R. 53(E)(3)(b) governs objections to findings made by a magistrate and states, "[o]bjections shall be specific and state with particularity the grounds of objection. * * * A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
In the magistrate's decision, the magistrate expressly stated that it "finds the agreement entered into by and between the parties [to pay one-half of their daughters' college expenses] is valid and [en]forcible as to the two daughters." The record shows that appellant did not object to this finding when he appealed the magistrate's decision to the trial court. Thus, pursuant to Civ.R. 53(E)(3)(b), this court is precluded from addressing appellant's second assignment of error, which is, thus, without merit. See Jones v. Simondis (Mar. 27, 1998), Trumbull App. No. 97-T-0073, unreported, at 6-7.
In his third assignment of error, appellant avers that the trial court erred in holding appellant in contempt for violating a separation agreement provision that was vague and ambiguous.
Contrary to appellant's assertion, the trial court indicated that the magistrate erred in not holding him in contempt for his refusal to comply with the separation agreement by contributing to his daughters' full college expenses. The court went on to write, "the original separation agreement clearly provided that each party contribute to the children's college expenses and that such funds shall be designed to cover the full cost of such education. [Appellant's] payment of $1500. [sic.] towards college expenses can hardly be considered as compliance * * *." Thus, it is evident that the trial court did not consider that provision in the separation agreement to be vague and ambiguous. Moreover, although the trial court stated that appellant was in "contempt" of the separation agreement, it did not impose any sanctions, though it did award attorney fees in the amount of $3,000 for appellee's prosecution of her motion to show cause.
There is an overwhelming body of case law in Ohio directing trial courts to interpret ambiguous or vague clauses in a separation agreement. Rohrbacher v. Rohrbacher (1992), 83 Ohio App.3d 569,575; In re Dissolution of Marriage of Seders (1987),42 Ohio App.3d 155, 156; Herold v. Herold (Dec. 22, 1992), Franklin App. No. 92AP-36, unreported, at 7-8, 1992 Ohio App. LEXIS 6770; see, generally, Rubenstein v. Rubenstein (Dec. 14, 1990) Trumbull App. No. 89-T-4291, unreported. Indeed, "[t]he trial court has broad discretion in clarifying ambiguous language by considering not only the intent of the parties but the equities involved." In re Seders, 42 Ohio App.3d at 156. See, also,Rohrbacher, 83 Ohio App.3d at 575. Furthermore, when the language of a provision in a separation agreement is ambiguous or vague, the trial court may consider extrinsic evidence in order to determine the parties' intentions. Herold, supra, at 7-8. "An interpretive decision by the trial court cannot be disturbed on appeal absent a showing of an abuse of discretion." In re Seders,42 Ohio App.3d at 156, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217. Finally, this court has defined college education/expenses to include tuition, room and board, and fees.Rubenstein, supra, unreported, at 6.
Based on the foregoing legal recitations, the trial court was empowered with the broad discretion to make clear any ambiguous provisions in the separation agreement by determining the intent of the parties and the equities involved. The trial court also could consider extrinsic evidence relating to the parties' intentions, if necessary. In the instant matter, even if the separation agreement provision concerning payment of college expenses was vague and ambiguous, the trial court was obligated to resolve such ambiguity. In its judgment entry, the trial court clearly determined that the provision was not so vague that it could not be interpreted, and further, the court decided that appellant's meager $1,500 outlay for college expenses was entirely noncompliant since the entire costs totaled over $30,000.
In reviewing the trial court's judgment entry and the factual record, we are of the view that the trial court did not abuse its discretion in interpreting the college expense provision in the separation agreement in such a manner that appellant's insubstantial contribution constituted contempt. Therefore, appellant's third assignment of error lacks merit.
In the fourth assignment of error, appellant claims that the trial court's holding that he must pay $13,669.50 plus interest at the rate of ten percent per annum from February 1997 is against the manifest weight of the evidence and contrary to law.
As discussed in the second assignment of error, appellant is barred from now arguing that the private agreement for the equal payment of all college expenses for his two daughters, between him and appellee, is unenforceable. Appellant failed to object before the trial court to the magistrate's finding that such agreement was enforceable. Thus, the trial court did not err in determining that appellant must pay one-half of his daughters' college expenses, which totaled $13,669.50 after deducting his $1,500 payment.
The trial court's decision to grant interest on the debt beginning from February 26, 1997, also must be affirmed on appeal. In Gen. Acc. Ins. v. Ins. Co. of N. Am. (1993), 90 Ohio App.3d 490,494, the court held, "[t]he purpose and rationale for awarding prejudgment interest is to make an injured party whole. An award of prejudgment interest is appropriate where one party clearly delays payment of a * * * debt to another." See, also, R.C.1343.03(A). A trial court's grant of prejudgment interest will be upheld absent an abuse of discretion. Kalain v. Smith (1986),25 Ohio St.3d 157, 159.
The record shows that appellant's daughters began to incur their college expenses in the fall of 1996. Additionally, appellee began paying those expenses on her own after appellant refused to contribute. Based on these facts, the trial court did not abuse its discretion in making appellee whole by ordering the payment of prejudgment interest. Thus, appellant's fourth assignment of error is not well-founded.
For the foregoing reasons, appellant's assignments of error are not well-taken and the judgment of the Geauga County Court of Common Pleas is affirmed.
PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.