OPINION
Plaintiff-appellant John Miller appeals from the June 11, 2001, Judgment Entry of the Stark County Court of Common Pleas, Family Court Division.
 STATEMENT OF THE FACTS AND CASE
On June 4, 1999, a Decree of Dissolution of Marriage was filed terminating the marriage of appellant John Miller and appellee Tracy Miller. The decree incorporated a Separation Agreement that was filed with the court on March 26, 1999. Article 5 of the Separation Agreement states, in relevant part, as follows:
 "Husband will finance the purchase of a home for Wife within two (2) years of the final dissolution decree in the amount not to exceed $120,000. Wife will be solely responsible for the monthly mortgage payments which will include taxes and insurance. Wife will also be responsible for any and all maintenance and upkeep on this property.
 Wife will be entitled to purchase said property within a two (2) year period after the house is purchased. Wife will obtain the necessary financing to purchase said property. At which time, Husband will quit-claim his interest in the property to the Wife provided that the remaining balance of the mortgage is paid off plus Husband is reimbursed one-hundred (100%) percent for all maintenance and repairs.
 If at the end of the two year period, Wife is unsuccessful in obtaining financing, Husband will have the right to sell said property and recoup his costs."
In exchange, appellee agreed to release any claim or interest in the marital residence.
Subsequently, on July 20, 2000, appellee filed a Motion to Vacate a Portion of the Parties' Separation Agreement. Appellee, in her motion, sought to vacate a portion of Article 5 of the agreement "because Plaintiff [appellant] has committed a fraud upon the Court by soliciting Defendant [appellee] to waive claims to marital property and by soliciting Defendant to waive other rights that Defendant had in the parties' property or assets in exchange for Plaintiff's agreement to provide financing for a home for Defendant." In an affidavit attached to her motion, appellee specifically alleged, in part, as follows:
 On March 26, 1999 my husband and I executed a Separation Agreement which provided that my husband would be required to "finance" the purchase of a home for me within two (2) years from the date of our final decree.
 My ex-husband failed and refused to cooperate with the above provisions and as a result I was required to secure financing himself [sic].
 The obligation my ex-husband took on as highlighted in Paragraph 1 above, included his obligation to pay all closing costs associated with a loan and his payment of 20% down on a loan for one Hundred Twenty Thousand and 00/100 Dollars ($120,000.00). In exchange for his agreement on these points, I released my claims to our property located at 2536 Carrington Street, NW, North Canton, Ohio 44720 and I released claims to other property.
 As a result of my ex-husband's refusal to comply with the terms of our Agreement, I have incurred costs which exceed Twenty-eight Thousand and 00/100 Dollars ($28,000.00) to obtain the result spelled out in Article No. 5, Paragraph 2 and 3 of our Separation Agreement.
On the same date, appellee filed a Motion for Contempt against appellant for failing to comply with Article 5 of the Separation Agreement.
Subsequently, a hearing on both motions was held on July 20, 2000. The trial court, as memorialized in a Judgment Entry filed on October 10, 2000, denied appellee's Motion for Contempt since the two year period in which appellant was to comply with Article 5 by financing a home for appellee had not yet expired.[1] The trial court, in its October 10, 2000, Judgment Entry, further found that Article 5 was ambiguous since "[w]hat is absent [from Article 5] is a specific requirement requiring him [appellant] to pay a down payment and there exists an ambiguity in the agreement as to whether he [appellant] was to bear such a cost without reimbursement." For such reason, the trial court set an evidentiary hearing before a Magistrate to "take testimony regarding the parties' intention to assist in construing the language of the separation agreement." In its October 10, 2000, Judgment Entry, the trial court specifically stated that it reserved "the right to rule upon the Defendant's Motion to Vacate following the submission of evidence."
Thereafter, a hearing before a Magistrate was held on October 24, 2000. At the hearing, Attorney John Wirtz, who was appellee's attorney during the negotiation of the Separation Agreement, testified. Attorney Wirtz testified that he understood that the provision in Article 5 of the Separation Agreement requiring appellant to finance appellee's purchase of a $120,000.00 home meant that appellant would provide a 20% down payment toward appellee's purchase of a home not to exceed $120,000.00. A memo dated March 26, 1999, that Attorney Wirtz dictated to his file was admitted into evidence at the hearing as appellee's exhibit one. The memo, which was admitted without objection, states as follows:
 TRACY MILLER WAS ADVISED THAT SHE SHOULD FIND A HOUSE WITHIN TWO YEARS AT AROUND $120,000.00. HE IS TO MAKE THE 20% DOWN PAYMENT AND FINANCE THE HOUSE. THE 20% DOWN PAYMENT WAS TAKEN IN EXCHANGE FOR HER NOT MAKING ANY CLAIM TOWARD HIS RETIREMENT BENEFITS. SHE WAS ADVISED THAT SHE SHOULD ANYTHING OR GET SOMEONE ELSE INVOLVED TO HELP FINANCE THE PROPERTY IN THE EVENT THAT SHE CANNOT AFFORD TO DO SO THAT SHE CAN RETAIN THAT ASSET.[2]
In addition, an addendum prepared by appellant prior to the parties' execution of the Separation Agreement was admitted into evidence as without objection. The addendum contains language indicating that appellant would pay "$17,000.00 on or before Dec. 31, 1998, to be used as a down payment for a house" for appellee. When asked during the hearing why 20% as opposed to 5%, 10% or 15%, Attorney Wirtz responded as follows:
 Because, right now I can't tell you, ah . . . I suspect at the time, and I'm just telling you what I'm thinking, maybe at the time I'm trying to represent her and get what she wants and a fair agreement, that's all I can tell you. I tried to you know, follow the statue [sic] when I'm doing a settlement, which if the (not audible) calls for 50/50 division of the marital assets, and that's where I was headed. Of the stuff acquired during the course of, the property acquired during the course of the marriage, that's were [sic] I start from.
Transcript of October 24, 2000, hearing at 17.
Appellee also testified as follows at the October 24, 2000, hearing regarding her impression of what the provision in Article 5 of the Separation Agreement requiring appellant to finance the purchase of a home for her meant:
 A. Okay. That to me when I was, when I quick claimed my part in, in our marital residents [sic], this was a trade for that. That was giving him the opportunity to keep the home, build the equity in it, giving me the opportunity to establish credit, and he to finance which meant to me purchase a home and put down the 20% standard down payment that we've always done in the past.
 Q. That what that 20% came up with that you guys had always and previous arrangements put down 20% of home purchases?
 A. During our marriage we purchased 3 homes, and each time 20-25 in between there, 20-25% down.
Transcript of October 24, 2000, hearing at 22.
At the October 24, 2000, hearing, Attorney Andy Ginella testified on appellant's behalf. Attorney Ginella, who drafted the Separation Agreement while representing appellant, testified that a 20% down payment was never discussed and that Article 5 of the Separation Agreement required appellant to purchase a home for appellee and keep the home in his name until appellee purchased the same from him, allowing appellant to recoup his cost. Upon questioning by appellee's counsel, Attorney Ginella testified that a bank would not loan money to an individual, such as appellee, who has no credit rating without requiring either a 10% or 20% down payment.[3]
At the conclusion of the hearing, the Magistrate, pursuant to a Decision filed on March 20, 2001, ordered as follows:
 "Based upon the foregoing findings of fact and conclusions of law, this court determines that the term finance as utilized within the parties' Separation Agreement filed March 26, 1999 is ambiguous and the parties intended for Plaintiff to pay a 20% down payment and obtain financing on Defendant's purchase of a home not to exceed $120,000.00. Plaintiff shall pay to the Defendant the sum of $27,933.17 within thirty (30) days of the filing of this entry for damages resulting from Plaintiff's noncompliance with provision five (5) of the parties' Separation Agreement."
The Magistrate specifically noted in his decision that while he found the testimony of Attorney Wirtz and appellee to be credible, he found Attorney Ginella lacking in credibility. After appellant filed objections to the Magistrate's Decision, an objection hearing was held before the trial court on June 6, 2001. Pursuant to a Judgment Entry filed on June 11, 2001, the trial court overruled appellant's objections and approved and adopted the Magistrate's Decision.
It is from the trial court's June 11, 2001, Judgment Entry that appellant now prosecutes his appeal, raising the following assignment of error:
 THE TRIAL COURT ERRED IN UPHOLDING THE MAGISTRATE'S DECISION WHICH REFORMED A SEPARATION AGREEMENT BETWEEN THE PARTIES FOR THE REASON THAT SAID MAGISTRATE'S DECISION WAS CONTRARY TO LAW, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND ISSUED WITHOUT CONSTITUTIONAL DUE PROCESS.
 I
Appellant, in his sole assignment of error, challenges the trial court's June 11, 2001, Judgment Entry adopting the Magistrate's Decision. Appellant specifically contends that the Magistrate and trial court lacked jurisdiction to reform Article 5 of the Separation Agreement when the only motion before the court was appellee's Motion to Vacate. According to appellant, "[i]f the Court decided in the affirmative, the only action the Court should have taken was to vacate the judgment and assign the matter for trial on the merits." Appellant further maintains that the Magistrate erred by relying on extrinsic evidence at the October 24, 2000, hearing to reform Article 5 and that appellant was denied due process since he was not given an opportunity to be heard regarding reformation of the agreement and regarding damages.[4] Finally, appellant asserts that the trial court's July 11, 2001, Judgment Entry was against the manifest weight of the evidence.
As is stated above, appellee filed a Motion to Vacate a portion of Article 5 of the Separation Agreement, arguing that appellant committed fraud by failing to comply with his obligation to pay 20% down on a loan of $120,000.00 to finance a home for appellee. The trial court, as memorialized in a Judgment Entry filed on October 10, 2000, found that Article 5 was ambiguous and, for such reason, set an evidentiary hearing to take testimony "regarding the parties' intention to assist in construing the language of the separation agreement." In its entry, the trial court expressly stated that it was reserving the right to rule upon appellee's Motion to Vacate following submission of the evidence. Thereafter, following an evidentiary hearing, the Magistrate determined that "the term finance as utilized within the parties' Separation Agreement filed March 26, 1999, is ambiguous and the parties intended for Plaintiff to pay a 20% down payment and obtain financing on Defendant's purchase of a home not to exceed $120,000.00."
While appellant contends that the trial court, by accepting and adopting the Magistrate's Decision, reformed Article 5 of the Separation Agreement and that the trial court lacked jurisdiction to do so, we do not concur. As recognized by the court in Forstner v. Forstner (1990),68 Ohio App.3d 367, a separation agreement is a contract and its interpretation is a matter of law, subject to the same rules of construction as other contracts. Therefore, when the terms of a separation agreement are confusing or ambiguous, a trial court is afforded broad discretion in clarifying those terms and may resolve disputes by considering not only the parties' intent with regards to those terms, but also the equities involved in each particular case.Rohrbacher v. Rohrbacher (1992), 83 Ohio App.3d 569, Robinson v. Rodi
(1998), 129 Ohio App.3d 550.
In the case sub judice, the trial court did not reform Article 5 of the Separation Agreement, which was incorporated into the Decree, but it merely interpreted what it deemed to be an ambiguous provision in the Separation Agreement regarding financing. Clearly, before ruling on appellee's Motion to Vacate a portion of Article 5, the trial court had to interpret the language in Article 5 requiring appellant to finance the purchase of a home for appellee.[5] An interpretive decision such as this will not be disturbed absent an abuse of discretion. Quisenberry v.Quisenberry (1993), 91 Ohio App.3d 341, 348; In re Dissolution ofMarriage of Seders (1987), 42 Ohio App.3d 155, 156. An abuse of discretion constitutes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Based on the testimony from both Attorney Wirtz and appellee, which is set forth above in the statement of facts and which the trial court found credible, we cannot say that the trial court abused its discretion in interpreting the language in Article 5 as is it did. The trial court's decision was not arbitrary, unconscionable or unreasonable. Furthermore, for the same reason, we find that the trial court's interpretation of Article 5 was not against the manifest weight of the evidence. There was competent and credible evidence supporting the trial court's determination that under Article 5 of the Separation Agreement, appellant was to pay a 20% down payment and obtain financing on a home for appellee not to exceed $120,000.00. See C.E. Morris Co. v. Foley Construction
(1978), 54 Ohio St.2d 279.
Appellant, in his brief, further argues that the Magistrate improperly relied on the "Wirtz memo" and the addendum in interpreting Article 5 of the Separation Agreement since the same constitutes extrinsic evidence. Appellant points out that neither were presented to appellant's attorney or made part of the Separation Agreement. However, when a term in a Separation Agreement is not clear, parol evidence is admissible to explain the meaning of the words. Forstner, supra. at 372. Since the language in Article 5 of the Separation Agreement regarding appellant's financing of the purchase of a home for appellee clearly was ambiguous, the Magistrate did not err in considering the "Wirtz memo" and the addendum in determining the parties' intent. Furthermore, a review of the record reveals that appellant did not object to the admission of the memo and the addendum at trial. Rather, counsel for appellant stated on the record that he had no objections to the admission of the same. By failing to object to the admission of the Wirtz memo and the addendum at trial, appellant waived any error concerning the admission of the same. GenesisRespiratory Services, Inc. v. Hall (1994), 99 Ohio App.3d 23.
In his final argument, appellant asserts that he was denied "constitutional due process on the issue of damages as well as the issue of reformation." Appellant specifically argues that "[w]hen the Court remanded the case back to take evidence on the provisions of Article V regarding the Motion to Vacate, nothing was intended to allow Defendant-Appellee to present evidence on the issue of damages." We agree.
Appellee, in the affidavit attached to her Motion to Vacate, indicated that as a result of appellant's refusal to comply with Article 5 of the Separation Agreement, she had incurred costs exceeding $28,000.00. The trial court noted the same in its October 10, 2000, Judgment Entry setting an evidentiary hearing to determine the parties' intent in approving Article 5. Thus, prior to the October 24, 2000, evidentiary hearing, appellant was put on notice both that the trial court found Article 5 to be ambiguous and in need of interpretation and that appellee was claiming damages exceeding $28,000.00. However, while appellant was advised that appellee was seeking damages, appellant was never advised that the evidentiary hearing would include a hearing on damages. Without such notice, appellant was denied the opportunity to present evidence on such issue. In short, we find that appellant was denied constitutional due process.
Based on the foregoing, appellant's sole assignment of error is overruled in part and granted in part.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed in part and reversed in part. This matter is remanded to the trial court for a hearing on damages. Costs to be paid 50% by plaintiff-appellant and 50% by defendant-appellee.
Hon. Julie Edwards, P.J., Hon. Sheila Farmer, J., Hon. John Wise, J., concurs.
[1] The trial court, in its October 10, 2000, Judgment Entry, indicated that appellant had until June 4, 2001, to comply with Article 5.
[2] The above, while missing some verbiage, was taken verbatim from the March 26, 2999, memo.
[3] Appellee did not have a past credit history immediately prior to the divorce.
[4] Appellant, in his brief, does not argue that appellee has failed to meet the standards for relief from judgment set forth in GTE AutomaticElectric, Inc. v. ARC Indus., Inc. (1976), 47 Ohio St.2d 146.
[5] Since the trial court failed to rule on appellee's Motion to Vacate, it will be presumed that it was overruled. Gosden v. Louis
(1996), 116 Ohio App.3d 195, 222.