JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Anthony M. DiFranco ("DiFranco"), appeals the trial court's decision denying his motion to reallocate parental rights and responsibilities, finding him in contempt, calculating the child support arrearages, and ordering him to pay attorney fees. Finding no merit to the appeal, we affirm.
 {¶ 2} In 1996, DiFranco and plaintiff-appellee, Dawn DiFranco n.k.a. Smith ("Smith") divorced. The judgment entry of divorce incorporated a shared parenting plan for the parties' two children. In 1999, DiFranco filed a motion to modify allocation of parental rights and responsibilities and Smith requested an administrative review of DiFranco's child support obligation.
 {¶ 3} DiFranco sought to modify allocation of parental rights and responsibilities based on their son's desire to live with him. During the pendency of his motion, their son primarily lived with DiFranco and their daughter was spending less time with Smith. As a result, the parties entered into an interim visitation agreement, in which they agreed that visitation would occur on an alternating weekly basis. The evidence presented demonstrated that this visitation agreement was not followed; visitation between the son and Smith rarely occurred, if at all. This lack of compliance prompted Smith to file two motions to show cause against DiFranco.
 {¶ 4} Under an administrative review, the Cuyahoga County Child Support Enforcement Agency ("CSEA") recommended that DiFranco's child support obligation be increased from $259 per month per child to $363.50 per month per child, effective November 1, 1999. DiFranco appealed the findings of CSEA because the children were spending more time with him, thus a downward deviation or outright termination of child support was requested.
 {¶ 5} Various matters were pending before the trial court, including DiFranco's motion to modify allocation of parental rights, DiFranco's appeal of the CSEA's child support modification, Smith's motions to show cause, and motions for fees by both the children's guardian ad litem and their attorney. The matter was assigned to a magistrate.
 {¶ 6} After hearing testimony and evidence on these matters for five consecutive days, the magistrate recommended that the court deny DiFranco's motion to modify allocation of parental rights. The magistrate also determined that CSEA used the parties' incorrect incomes and thus DiFranco's child support obligation should have been only $333.14 per month per child. Accordingly, DiFranco overpaid child support in the amount of $1,225.24. The magistrate also determined that his child support obligation be terminated effective January 31, 2001 and that neither party would be responsible for paying child support based on the parties' incomes and the shared parenting plan.
 {¶ 7} The magistrate also found DiFranco in contempt for failing to facilitate visitation between the children and Smith. The magistrate recommended that DiFranco be sentenced to thirty days, with an opportunity to purge his sentence by seeing that the daughter spent winter break and spring break with Smith. Further, the magistrate recommended that the parties be equally responsible for payment of fees and expenses incurred by the guardian ad litem and the children's counsel.
 {¶ 8} DiFranco objected to the magistrate's decision. However, the trial court adopted the magistrate's decision in its entirety including the findings of fact, conclusions of law, and recommendations.
 {¶ 9} DiFranco appeals, raising four assignments of error.
 Motion to Modify {¶ 10} In his first assignment of error, DiFranco argues that the trial court abused its discretion in denying his motion to modify allocation of parental rights and responsibilities. Because the parties' children are now emancipated, we need not reach the merits of DiFranco's argument.
 {¶ 11} During the course of litigation at the trial court, the parties' son became emancipated. Therefore, the trial court issued its decision regarding the parental rights and responsibilities solely for the daughter, who was then a minor. However, during the pendency of this appeal, the daughter became emancipated. She became 18 years of age in November 2005, graduated from high school in the spring of 2006, and is not under legal disability. See, R.C. 3109.01. It is well-settled that a court generally lacks subject matter jurisdiction to modify parental rights and responsibilities after a child has been emancipated. State ex rel Mandich v. Mandich (Aug. 20, 1997), Medina App. No. C.A. NO. 2622-M, citing Miller v. Miller
(1951), 154 Ohio St. 530, 97 N.E.2d 213, paragraph two of the syllabus; Rohrbacher v. Rohrbacher (1992), 83 Ohio App.3d 569,575, 615 N.E.2d 338; Maphet v. Heiselman (1984),13 Ohio App.3d 278, 279, 469 N.E.2d 92.
 {¶ 12} Therefore, because the daughter is now an adult, any possible error by the trial court, is moot. Accordingly, DiFranco's first assignment of error is overruled.
 Child Support Arrearages {¶ 13} DiFranco argues in his second assignment of error, that the trial court erred in the determination of child support arrearages.
 {¶ 14} A trial court's decision regarding a child support obligation, including arrearages, will not be reversed on appeal absent an abuse of discretion. Pauly v. Pauly,80 Ohio St.3d 386, 390, 1997-Ohio-105, 686 N.E.2d 1108. An abuse of discretion is "more than an error of law, it connotes that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. So long as the decision of the trial court is supported by some competent, credible evidence going to all the essential elements of the case, we will not disturb it. Masittov. Masitto (1986), 22 Ohio St.3d 63, 66, 488 N.E.2d 857.
 {¶ 15} The trial court determined that effective November 1, 1999 through January 21, 2001, DiFranco's child support obligation should have been $333.14 per month per child plus a two percent processing charge. Therefore, DiFranco overpaid child support in the amount of $1,225.24. The court then terminated DiFranco's child support obligation effective January 21, 2001 and ordered that neither party be responsible for paying child support. This decision was based on the parties' incomes and because the interim visitation agreement in effect at that time provided that the children would be spending equal time with the parties. The court concluded that each parent would be responsible for financially supporting the minor children when they were with that parent.
 {¶ 16} DiFranco argues on appeal that his child support obligation should have terminated effective October 1999 because the parties' children were living primarily with him. Therefore, his overpayment of child support should have totaled in excess of $15,000. Moreover, he claims that because the children were living primarily with him, the court erred in failing to create a child support obligation on Smith.
 {¶ 17} We find that competent and credible evidence exists to support the trial court's decision not to terminate the child support effective October 1999. The evidence shows that the son started spending more time with DiFranco in October 1999 and primarily resided with DiFranco by May 2000. The evidence shows that the daughter began residing full-time with DiFranco in late 2001 or early 2002. Nevertheless, the daughter believed that she spent an equal amount of quality time with both her parents. DiFranco has continuously denied Smith her right to parenting time with the children as required by the shared parenting plan and the interim visitation agreement. In fact, DiFranco admitted that he had no intention of following the interim visitation agreement when he signed it. Although DiFranco stated that he encouraged visitation, he never facilitated visitation between his children and Smith, even though he knew that the son was not visiting Smith. The evidence shows that there was an agreed court order that the children would alternate weeks between the parties and thus have equal visitation. The fact that their son chose not to follow the shared parenting visitation schedule and DiFranco did not enforce the schedule does not warrant the termination of DiFranco's child support obligation in October 1999. Furthermore, the daughter did not primarily reside with DiFranco until 2002, well after the effective termination date of support.
 {¶ 18} There is also competent and credible evidence to support the court's decision not to order Smith to pay child support once the children were living primarily with DiFranco. The court found that ordering child support would not be in the best interest of the parties based on the incomes of the parties and because the visitation agreement provided for equal visitation with the children. Accordingly, the court concluded that, based on the circumstances of the case, each party should be financially responsible for the children when they were in that parent's care.
 {¶ 19} Therefore, we cannot say that the trial court abused its discretion in terminating DiFranco's child support obligation effective January 31, 2001. We also find that it was well within the court's discretion to make no order for child support after January 2001.
 {¶ 20} Accordingly, DiFranco's second assignment of error is overruled.
 Contempt and Purge Order {¶ 21} In his third assignment of error, DiFranco argues that the trial court erred in finding him in contempt of court and ordering an unnecessary and excessive purge obligation on him.
 {¶ 22} R.C. 2705.02 provides that disobedience of a lawful order of the court may be punished as for a contempt. Dzina v.Dzina, Cuyahoga App. No. 83148, 2004-Ohio-4497 citing,Chojnowski v. Chojnowski, Cuyahoga App. No. 81379, 2003-Ohio-298. We apply an abuse of discretion standard to our review of a lower court's contempt finding. Marden v. Marden
(1996), 108 Ohio App.3d 568, 571, 671 N.E.2d 331.
 {¶ 23} The trial court found DiFranco in contempt for failing to comply with the interim visitation agreement in that he failed to facilitate visitation between Smith and the son. In fact, the court found that the son never followed the visitation schedule with Smith and that DiFranco admitted that when he signed the interim agreement, he had no intention of being bound by it. The court found him in contempt and sentenced him to thirty days in jail. However, the sentence could be purged provided that the daughter spent her 2004 winter break and 2005 spring break with Smith.
 {¶ 24} DiFranco moved for a stay of this contempt order. Although both parties state in their briefs that the court granted DiFranco's stay, our review of the record does not indicate that a stay was granted. Nevertheless, it appears that the daughter did not spend her 2004 winter break and 2005 spring break with Smith.
 {¶ 25} We find that the trial court did not abuse its discretion in finding DiFranco in contempt. The agreed interim order provides that the children were to spend one week on an alternating basis with each parent. The court found that DiFranco failed to comply with the order by failing to transport the son to Smith's residence for weekly visitation. In fact, the court found that the son never visited his mother according to the schedule. DiFranco admitted that he never intended to comply with the interim order.
 {¶ 26} DiFranco argues that the finding of contempt was unwarranted because the son did not want to visit with Smith. Although the children possessed a strong desire to spend more time with DiFranco and not visit their mother, DiFranco had an obligation to Smith and his children to facilitate visitation between them. Furthermore, he has an obligation to comply with court orders. Because he failed to comply with the interim visitation agreement, the court was well within its discretion in finding DiFranco in contempt.
 {¶ 27} DiFranco also argues that the purge order was unnecessary and excessive. We disagree. The court ordered DiFranco to spend thirty days in jail; however, he could purge his sentence by making sure that the daughter spent winter and spring breaks with Smith.
 {¶ 28} A trial court may employ sanctions to coerce a party who is in contempt into complying with a court order. Peach v.Peach, Cuyahoga App. Nos. 82414 and 82500, 2003-Ohio-5645. Any sanction for civil contempt must allow the party who is in contempt an opportunity to purge the contempt. Id. A trial court abuses its discretion in ordering purge conditions which are unreasonable or where compliance is impossible. Burchett v.Miller (1997), 123 Ohio App.3d 550, 704 N.E.2d 636. The party who is in contempt bears the burden of presenting sufficient evidence at the contempt hearing to establish that the trial court's purge conditions are unreasonable or impossible for him to satisfy. Marx v. Marx, Cuyahoga App. No. 82021, 2003-Ohio-3536.
 {¶ 29} DiFranco claims that the purge conditions were unreasonable because the visitation only served to punish the daughter. In support of this contention, he references Dr. Catherine Jackosky's report, which stated that the winter break and month-to-month visitation was not in the daughter's best interest. Her report stated that the daughter indicated that since she learned of the visitation, she was depressed and crying for three days. Even considering this report, we cannot say that the purge conditions were unreasonable or burdensome. Facilitating visitation between parents should not be deemed unreasonable merely because a teenager is upset that the visitation must occur. Moreover, parental visitation should not be regarded as punishment.
 {¶ 30} Therefore, we find that the trial court did not abuse its discretion in finding DiFranco in contempt. We further find that the purge conditions were neither unreasonable nor excessive.
 {¶ 31} Accordingly, the third assignment of error is overruled.
 Attorney Fees {¶ 32} DiFranco argues in his final assignment of error that the trial court erred in ordering him to pay the attorney fees incurred by their children's counsel.
 {¶ 33} Pursuant to R.C. 3105.73, the court has the discretion to award "litigation expenses to either party if the court finds the award equitable." Attorney fees incurred on behalf the parties' children are considered litigation expenses. Therefore, the court has discretion to allocate payment of these fees between the parties.
 {¶ 34} DiFranco argues that the trial court abused its discretion in ordering him to pay 100 percent of the children's attorney fees. He also claims that the children's attorney failed to present evidence supporting his itemized fee bill to warrant payment of the fees.
 {¶ 35} Our review of the record and the trial court's decision indicates that at the request of DiFranco, the court appointed Pamela Gorski as guardian ad litem to represent the interests of the children during the proceedings. When the guardian ad litem made a recommendation adverse to the children's wishes, DiFranco requested that the guardian ad litem be removed, and the court appointed Gary Axner as counsel for the children. Because of such appointments, Gorski incurred $14,032.28 in fees and expenses and Axner incurred $8,518.75 in fees and expenses.
 {¶ 36} Although DiFranco is correct in his assertion that the trial court ordered him to pay all of the attorney fees, the trial court also ordered Smith to pay a proportionate share of the guardian ad litem's fees. The court concluded:
"The Magistrate finds that the fees of Mr. Axner and Ms.Gorski should be divided as follows. Mr. DiFranco shall pay thefull amount of Mr. Axner's fees of $8,518.75. Ms. Smith shall pay$8,518.75 towards the Guardian ad Litem fees of Ms. Gorski. Theremaining Guardian ad Litem fees shall be divided equally betweenthe parties with each being responsible for the payment of$2,740.62."
 {¶ 37} Moreover, the court ordered that DiFranco's remaining responsibility toward the guardian ad litem's fees be set off by the amount of child support he overpaid Smith. Therefore, Smith essentially paid $12,484.61 toward the fees and expenses incurred by the children, and DiFranco paid $10,034.13 toward the same fees. We find this to be wholly equitable because each party was equally responsible for payment of litigation expenses incurred on behalf of the children. The trial court acted well within its discretion.
 {¶ 38} We also find that Axner provided the court with an itemized statement of fees and testified regarding his services, reasonableness of the time spent, and issues pertaining to the case. Moreover, DiFranco's counsel was permitted to examine him regarding his fees and itemized statement. A review of the record reveals that DiFranco's counsel did not make any specific inquiry regarding Axner's fees or time spent on the case.
 {¶ 39} The trial court found that Axner's fees were reasonable and that he performed the duties for which he was appointed. The court also found that counsel charged a lower rate than his usual hourly rate based on his appointment by the court to act as counsel for the children. Furthermore, the court found that the issues were routine and straightforward. We find that the record and itemized fee statement support the court's findings.
 {¶ 40} Therefore, we find that the trial court did not abuse its discretion in ordering DiFranco to pay Axner's fees. We also find that Axner provided sufficient evidence to support his fees and that the trial court acted within its discretion in awarding his requested fees.
 {¶ 41} Accordingly, DiFranco's final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to the Domestic Relations Division of the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Blackmon, J., concur.