NOKES, APPELLEE, *v.* NOKES, APPELLANT.

[Cite as Nokes v. Nokes (1976), 47 Ohio St. 2d 1.]

(No. 76-59—Decided July 7, 1976.)

2

Mr. *Robert D. Moss,* for appellee.

Mr. *Richard L. Goldsmith, Jr.,* for appellant.

*Per Curiam.* In recent years, numerous states, after statutorily reducing their age of majority from 21 to 18, have been asked to decide whether, and to what extent, decretal provisions for child support until majority or emancipation are affected by the law. The resulting decisions are contradictory and irreconcilable, and, accordingly, a review thereof would serve little purpose herein.

We start with the proposition that a court retains *continuing* jurisdiction over child support orders contained in divorce decrees (*Van Divort* v. *Van Divort* [1956], 165 Ohio St. 141, paragraph one of syllabus) and is empowered to modify such orders "* * * as to future installments * * * throughout the duration of the order." *Smith* v. *Smith* (1959), 168 Ohio St. 447, 450,

In *Miller* v. *Miller* (1951), 154 Ohio St. 530, 536, the court phrased "the sole question before * * * [it is] whether the [trial] court had any power or authority to order plaintiff [father] to keep the insurance policies alive in favor of his children after the latter had attained their majority."

The court responded in the negative to that question, and concluded, in paragraph four of the syllabus, that "the court is without authority, in the absence of contract," to issue such order which extends beyond the children's attainment of majority. Paragraphs two and three of the *Miller* syllabus read:

"2. In a divorce action, where a child of the parties attains his majority, authority of the court over such child comes to an end, and the court is without power to provide for the support of or aid to such child or to continue a provision for his support. (*Thiessen* v. *Moore*, 105 Ohio St., 401, approved and followed.)

"3. The parties to an action cannot by agreement clothe a court with jurisdiction of subject matter which it does not have."

The foregoing rules of law would appear to create a favorable environment for the implementation of legislative goals, such that a *change* in the age of majority may be readily implemented by the courts. However, appellee argues that a change in the age of majority should have no effect on extant decretal support obligations. Appellee specifically urges that a parental obligation to support children arising from a divorce decree "should be the same" as the obligation arising from a separation agreement incorporated into a divorce decree.

We readily accept the foregoing premise. Certainly, all minor children should receive the protection of R. C. 3103.03* to be supported by their parents. However, such

---

*R. C. 3103.03 and 3109.01 were amended by the same Act. R. C. 3103.03 now reads, in part:

"The husband must support * * * his minor children * * *.

"Notwithstanding Section 3109.01 of the Revised Code, the parental duty of support of children shall continue so long as the

support should not be dependent upon the presence or absence of parental contracts or court decrees. Children of nondivorced parents need no such artifice to bolster their claim to support. The common-law duty to support one's minor children has been replaced by R. C. 3103.03. Such statute should apply uniformly neither unimpeded nor unspurred by extraneous parental obligations. Appellee appears to recognize the proper context of support obligations in the statement of her "position that the enforceability of divorce decrees including provisions for education is directly dependent on the parental duty of child support imposed by law."

Appellee suggests that the "law" is found in paragraph two of the syllabus in *Mitchell* v. *Mitchell* (1960), 170 Ohio St. 507, which reads:

"In a divorce action, it is not abuse of discretion as a matter of law for the trial court, having jurisdiction of the parties, to order payments by the father for the college education of minor children electing to matriculate in an accredited college."

Certain words used in that syllabus, however, subvert its utility in the present matter. As the court specifically observed, at page 509, "* * * we are not concerned with college provisions for the children after the age of 21, a factor which has complicated some other cases, since the agreement here specifically concerns only *minor* children. (The fact that such provision extended past the children's 21st birthdays was the basis of Judge Zimmerman's dissent in the *Robrock* [v. *Robrock* (1958), 167 Ohio St. 479] *case, supra.*)" (Emphasis *sic.*) The court, at page 510, also found it "unnecessary * * * to consider the propriety of judicially noticing whether the passing years have increased the necessity for, or the desirability of, higher education," but noted that the father had conceded such necessity in his brief.

We need not now reexamine *Mitchell*, but we doubt the

child continuously attends on a full-time basis any recognized and accredited high school, even when such child has attained the age of majority. Such duty of support shall continue during seasonal vacation periods. * * *"

propriety of inferences therein that a court may impose a child support obligation which exceeds the statutory duty of *all* parents, whether married or divorced, to support their minor children.

We also need not herein reexamine *Robrock* v. *Robrock, supra*, cited in *Mitchell*, inasmuch as that case involved a separation agreement incorporated into the decree. However, in light of the issues presented in the *Rosenfeld* case, that all divorce decrees, whether derived from an agreement of the parties or otherwise, have independent force, we examine the last two paragraphs of the *Robrock* syllabus, which read:

"4. In a divorce case, the court, to give effect to a separation agreement, has the power to incorporate it in the divorce decree or base the decree on its provisions, even though the court, in the absence of an agreement of the parties, would not have the power to make the resultant decree.

"5. Where, as part of a valid agreement, a husband agrees to provide a college education for his children and further agrees to keep in effect insurance policies on his life in which such children are beneficiaries, and where such agreement is incorporated in a decree divorcing the husband from his wife, such decree becomes binding upon the husband even though the performance required by the decree may extend beyond the minority of the children."

We note first that paragraphs four and five are in total contradiction to the herein quoted paragraphs two and three of the syllabus in *Miller* v. *Miller, supra* (154 Ohio St. 530). Thus, paragraphs four and five are aberrations, isolated in time and circumstance.

Secondly, the adoption of those two paragraphs of the syllabus in *Robrock* cleanly divided this court four to three. Zimmerman, J., writing for the minority, states, at page 491: "* * * As pointed out in the majority opinion, there is no legal liability on the part of a father to support his children after they have reached the age of 21, and the court is without authority to impose such duty either as to educa-

tional expenses or otherwise *after* they attain such age. " • • •.

"Putting the proposition a little differently, the support and maintenance of children while they are minors is the only obligation with which a father may lawfully be charged. A court, therefore, exceeds its jurisdiction by imposing additional obligations, such as the requirement that insurance be maintained for the benefit of the children for an indefinite period which might well extend far beyond their minority. An order of that sort would result in the expansion of the statutes relating to support and maintenance much further than their obvious scope and purpose." (Emphasis *sic*.)

The majority opinion does not overrule, nor even directly address, the *Miller* holding or the foregoing argument of Zimmerman, J. Rather, although correctly holding in paragraph three of the syllabus that " [w]here an agreement of the parties is incorporated in the decree of a court in a divorce case, such agreement is superseded by the decree, and the obligations imposed by such agreement are thereafter imposed by decree and may be enforced as such * * *" the majority opinion states, at page 488:

"We are of the opinion that such [separation] agreements [which are incorporated into a decree of divorce] should not be impaired for the reason that the court, if acting without such agreement, would not have the authority to impose such an obligation."

The apparent nonsequitur follows citations to *Law v. Law* (1901), 64 Ohio St. 369, and *Tullis v. Tullis* (1941), 138 Ohio St. 187. *Law v. Law* is distinguished in *Hunt v. Hunt* (1959), 169 Ohio St. 276, and overruled in part in *Wolfe v. Wolfe* (1976), 46 Ohio St. 2d. 399, and *Tullis v. Tullis* is distinguished in *Seitz v. Seitz* (1952), 156 Ohio St. 516, questioned in *Lowman v. Lowman* (1956), 166 Ohio St. 1, 8, and overruled in *Peters v. Peters* (1968), 14 Ohio St. 2d. 268.

Accordingly, we must conclude that the vitality of paragraphs four and five of the syllabus in *Robrock* is no longer apparent.

Appellee's final argument is that a holding adverse to her herein would be "tantamount to a ruling that * * * [R. C. 3109.01] applies retroactively" and, therefore, in violation of Section 28, Article II of the Ohio Constitution. We agree.

Even though R. C. 3109.01 does not contain a savings clause, we find that the provision of R. C. 3105.10(B) that "[a] separation agreement providing for the support of children eighteen years of age or older is enforceable by the Court of Common Pleas * * * " is sufficient to indicate a legislative intent that the general savings clause, R. C. 1.58, be applied to situations as herein presented.

As early as 1875, this court held, in *Bode* v. *Welch* (1875), 29 Ohio St. 19, that the predecessor to R. C. 1.20, and now R. C. 1.58, must be read as a savings clause to statutes which amend prior legislation.

R. C. 1.58 is an amplification and clarification of the earlier statutes. It reads:

"(A) The reenactment, amendment, or repeal of a statute does not except as provided in division (B) of this section:

"(1) Affect the prior operation of the statute or any prior action taken thereunder;

"(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;

"(3) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;

"(4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

"(B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not

already imposed, shall be imposed according to the statute as amended.''

Subdivision (B) relates only to offenses, and is, thus, not relevant herein.

Subdivisions (A)(1) and (A)(2) are directly applicable to the present case, and control its outcome.

Under R. C. 1.58(A)(1), the amendment to R. C. 3109.01 does "not affect" the decretal provisions for supporting a child until age 21, which were "actions" of the court made under the earlier version of R. C. 3109.01.

Nor, under R. C. 1.58(A)(2), may the "obligation" to provide such support, previously "incurred" under the decree pursuant to the earlier version of R. C. 3109.01, be later changed solely by reason of the amendment.

The Act lowering the age of majority in this state to age 18 reveals no intention of the General Assembly that it should apply any way other than prospectively, and R. C. 1.58 specifically requires prospective application.

For the foregoing reasons, the statutory change in the age of majority can have no application to the subject decretal support obligations, because such change, in and of itself, has no effect upon pre-1974 support decrees.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL C. J., HERBERT, STERN, W. BROWN and P. BROWN, JJ., concur.

CORRIGAN and CELEBREZZE, JJ., dissent.

CELEBREZZE, J., dissenting. Because I do not agree that retroactive application of R. C. 3109.01 violates Section 28, Article II of the Ohio Constitution, I must respectfully dissent from the judgment rendered herein.

Section 28, Article II of the Ohio Constitution provides, in pertinent part: "The General Assembly shall have no power to pass retroactive laws * * *.''

In *Gregory* v. *Flowers* (1972), 32 Ohio St. 2d 48, the court held that the prohibition contained in Section 28,

10

Article II, applies only to laws affecting substantive rights.

Thus, the ultimate issue presented by this appeal is whether either the right to child support payments or the attainment of "majority" age confers vested rights upon the principals involved.

The majority opinion concludes, *sub silentio*, that the right to child support payments is not a vested right, by its citations to *Smith* v. *Smith* (1959), 168 Ohio St. 447; *Van Divort* v. *Van Divort* (1956), 165 Ohio St. 141; *Miller* v. *Miller* (1951), 154 Ohio St. 530; and *Thiessen* v. *Moore* (1922), 105 Ohio St. 401. See, also, *Peters* v. *Peters* (1968), 14 Ohio St. 2d 268. In *Peters*, the court held that "a decree of divorce, which provides for the custody and support of minor children of the divorced parties, continues the jurisdiction of the court with respect to the support of such children during their minority * * * . In such an instance, the court may increase or decrease the provisions for support of such minor children as changed circumstances may require."

In my view, if a court possesses power to modify provisions for support of minor children "as changed circumstances may require," then, *ipso facto*, the right to such child support payments cannot be vested.

With respect to whether the term "majority," or, conversely, the term "minority," can be equated with the concept of vested rights, the great weight of authority is to the contrary. In *Valley Nat. Bank of Phoenix* v. *Glover* (1945), 62 Ariz. 538, 159 P. 2d 292, the court, at page 301, stated: "* * * The rule is settled beyond a doubt that majority or minority is a status rather than a fixed or vested right, and that the legislature has full power to fix and change the age of majority." See, also, *Schmitz* v. *Schmitz* (Wisc. 1975), 236 N. W. 2d 657; *Jungjohann* v. *Jungjohann* (1973), 213 Kan. 329, 516 P. 2d 904; *Mason* v. *Mason* (1973), 84 N. M. 720, 507 P. 2d 781; *Shoaf* v. *Shoaf* (1972), 282 N. C. 287, 192 S. E. 2d 299; *Lookout* v. *Lookout* (Okla. App. 1974), 526 P. 2d 1405; 42 American Jurisprudence 2d, Infants, Section 1.

Accordingly, in view of the foregoing, denial of retroactive application of R. C. 3109.01 is tantamount to hold-

ing that majority or minority is a fixed or vested right, a position which I find to be untenable.

Finally, the attempt by the majority to circumvent the above rationale by reading into R. C. 3109.01 a "savings clause" that does not exist ignores settled concepts of statutory construction, and, in the process thereof, establishes new principles unnecessary to resolution of the issues herein presented. In *Board of Edn.* v. *Fulton County Budget Comm.* (1975), 41 Ohio St. 2d 147, the court, at page 156, stated: "Courts do not have the authority to ignore, in the guise of statutory interpretation, the plain and unambiguous language in a statute." (Citations omitted.) And, in *First National Bank of Wilmington* v. *Kosydar* (1976), 45 Ohio St. 2d 101, the court, at page 106, stated: "In the construction of a legislative enactment, the question is not what did the General Assembly intend to enact but what is the meaning of that which it did."

The plain impact of the majority opinion is to legislate a savings clause into R. C. 3109.01 that does not exist upon the face of that statute. R. C. 3109.01, in clear and unambiguous language, provides: "All persons of the age of eighteen years or more, who are under no legal disability, are capable of contracting and are *of full age for all purposes.*" (Emphasis added.) Had the General Assembly intended to prevent retroactive application of R. C. 3109.01, it would have been easy to do so. The General Assembly did not do so, however, and this court should not now usurp the legislative province by "judicial construction."

To conclude, in my view R. C. 3109.01 may be applied retroactively under the facts of this case since no vested or substantive rights are herein involved. In this regard, it should be noted that the issue of whether a father would recover support payments made prior to 1974, or even after, for a child over 18 years of age is not presented in the instant cause.

For the foregoing reasons, I dissent from the judgment rendered herein.