OPINION
Paul Anderson appeals from the judgment of the Greene County Common Pleas Court which denied his motion to have his former spouse Sandra Anderson repay him $4,029.40 which he considered to be an "overpayment" of his child support obligation for their son, Chad.
The Andersons were divorced on December 14, 1994. Mrs. Anderson was awarded custody of Shane and Chad Anderson and Mr. Anderson was awarded custody of Jesse Anderson. The decree of divorce provided as follows:
 "The Plaintiff shall pay as and for child support to the Defendant the sum of Three Hundred Eighty-Four Dollars ($384.00) per month for Shane Anderson and Chad Anderson, said calculation taking into account that Jesse Anderson is in the custody of the Plaintiff. Copies of the calculation are also attached hereto and fully incorporated by reference herein. Child support shall be paid by mandatory wage assignment through the Child Support Enforcement Agency together with the necessary poundage as required by law. A wage deduction order shall issue to the Plaintiff's employer, in the amount of $88.61 per week plus poundage."
 The parties entered into an agreed order on August 26, 1996 that Jesse was emancipated as of July 18, 1996 and Mr. Anderson would pay child support monthly in the amount of $541 plus poundage on behalf of Chad. This order like the divorce decree did not speak to its duration.
At the time the Andersons divorced, R.C. 3109.05(E) provided the following:
 "Notwithstanding Section 3109.01 of the Revised Code, if a court issues a child support order under this section, the order shall remain in effect beyond the child's 18th_birthday so long as the child continuously attends on a full-time basis any recognized and accredited high school. Any parent ordered to pay support under a child support order issued under this section shall continue to pay support under the order, including during seasonal vacation periods, until the order terminates."
On January 1, 1998 R.C. 3109.05(E) was amended as follows:
 "Notwithstanding Section 3109.01 of the Revised Code, if a court issues a child support order under this section, the order shall remain in effect beyond the child's 18th birthday so long as the child continuously attends on a full-time basis any recognized and accredited high school or the order provides that the duty of support of the child continues beyond the child's 18th_birthday. Except in cases in which the order provides the duty of support continue for any period after the child reaches age 19, the order shall not remain in effect after the child reaches age 19. . . ."
(Emphasis added)
On July 15, 1999, the Magistrate filed a Decision 
Order determining that the minor child, Chad, was emancipated on October 17, 1998, having turned 19 and further found that he graduated from high school on June 4, 1999. That Order, likewise, found that the Obligor's current child support ended October 17, 1998, the date of the minor child being 19 years of age. The Magistrate ordered any funds currently being held by the Child Support Enforcement Agency to be returned to the Obligor who is the Plaintiff-Appellant. The Magistrate further determined that the Appellant had overpaid $4,029.40 which had already been paid to the Defendant-Appellee and ordered the appellant to file a Motion within thirty (30) days from the date of that Decision requesting reimbursement or the repayment would be deemed waived. The trial court adopted the Magistrate's decision and order on the same day. No Objections or appeal were filed to that Order. On August 4, 1999, within thirty (30) days required by the Court, the Appellant filed his Motion for repayment of the $4,029.40 in overpayment from the appellee.
The matter was scheduled for hearing on October 4, 1999 and the parties stipulated that this issue involves the minor child, Chad Anderson, and that he graduated from Greenview High School on June 4, 1999. The parties further agreed the CSEA's calculation showed the appellant had overpaid $4,029.40 to the appellee if his obligation terminated on his son's 19th birthday. The parties also stipulated that the effective date of the change of Section3109.05(E) of the Ohio Revised Code was January 1, 1998.
On October 5, 1999, the Magistrate issued his recommendation that the motion for repayment be denied. The Magistrate found that the appellant's obligation to pay child support was governed by the law in effect at the time of his divorce and not by the recent 1998 amendments.
The trial court overruled the appellant's objections. The court stated that it was not the duty of the court to modify the appellant's support obligations "sua sponte" whenever the legislature changes existing law. The court stated it was the "plaintiff's duty to petition the Court for termination of his support obligation when the child reached his nineteenth birthday." The court also agreed with the Magistrate that the amendment to R.C. 3109.05(E) was prospective only.
In his first assignment of error, appellant contends the trial court erred in determining that R.C. 3109.05(E) as amended is prospective only. Appellant argues that since neither the final decree nor the subsequent agreed order provided for a termination date, the new legislation controlled the date for appellant's duty to support his son Chad.
The appellee argues that appellant must have intended by his agreement to pay child support until his son Chad finished high school, because he took no action to terminate his support obligation until Chad graduated from high school and he was informed by the court of the overpayment.
In Nokes v. Nokes (1976), 47 Ohio St.2d 1, the Ohio Supreme Court held that the Act lowering the age of majority in Ohio revealed no intention of the General Assembly that it should apply any way other than prospectively and R.C. 1.58 specifically requires prospective application. Thus the court held that statutory change in the age of majority could have no application to pre-1974 decretal support obligations.
In Zweifel v. Price (1985), 24 Ohio App.3d 101, the Franklin County Court of Appeals held that where an order of support makes no reference to its duration, the order continues as long as required by the applicable statutes whether the child is at the age of majority effective at the issuance of the order or as altered by subsequent amendments.
The court in Zweifel distinguished Nokes because it found that the Nokes decision dealt with a situation where the duration of the obligation of support was impliedly enumerated within the order.
In Motley v. Motley (1995), 102 Ohio App.3d 67, the Summit County Court of Appeals agreed with the Zweifel court's interpretation of the Nokes decision and held that where the divorce decree did not include enumeration of duration of husband's child support obligation, but only provided that it would continue until further order of court, the obligation ended when each child reached 18, even though the original decree was entered prior to statutory amendment lowering age of majority from 21 to 18. Judge Dickinson wrote the following at page 70 of the court's opinion:
 Pursuant to the rationales of Nokes, Rosenfeld, and Zweifel, a determination of whether an obligation to provide child support pursuant to a pre-1974 decree depends upon whether the decree, explicitly or implicitly, "enumerated" the duration of the obligation of support. If it did, like those in Nokes and Rosenfeld, that obligation was not changed by the lowering of the age of majority. It if did not, like that in Zweifel, the lowering of the age of majority meant that the support obligation ended when the child or children at issue reached the age of eighteen.
 In Benzinger v. Benzinger (Feb. 7, 1996), Ham. App. C-940974 and C-940990, unreported, the Hamilton County Court of Appeals agreed with the interpretation of Nokes by the Franklin County and Summit County Courts of Appeals.
In Benzinger, the decree provided the appellant father was to pay his former spouse the sum of $25 per week for the maintenance and support of the Benzingers' "minor son." At the time the decree was entered in 1970 the age of majority was 21. In 1974 the age of majority was lowered to 18. CSEA argued that given the decretal order's silence on the issue, "the duration period was implicitly set at age twenty-one" and that no other interpretation of the order can be reasonably inferred. Judge Gorman responded to this argument with the following:
 We disagree. Significant in CSEA's argument is its acknowledgment that the issue is essentially one of interpretation. Where, as here, the order does not expressly state a period of duration, but employs only the term "minor son," nothing in the order itself compels the conclusion that the court did not intend the meaning of the term "minor" to encompass legislative changes in the age of majority. To the contrary, the proper inference to be drawn is that the support obligation was concomitant with the minority status of the son — a status which, as Justice Celebreeze reminded the majority in Nokes, is neither fixed nor vested but controlled by the legislature. See Nokes, supra at 10, 351 N.E.2d at 180 (Celebreeze, J., dissenting).
 We concur, therefore, with the court in Zweifel and Motley that a support order which is silent as to its duration and speaks only to the minority status of the child or children gives rise, in the absence of any countervailing evidence, to an inference that the support obligation was intended by the court to continue only so long as the child maintains his minority status pursuant to the applicable statutes and any subsequent amendments.
 We conclude that this principle of construction does not result in an improper retrospective application of the 1974 amendments to R.C. 3109.01 and 3101.03 as proscribed by Nokes. As this court has recently noted:
 "[A] statute can be construed retrospective in application only if it `takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed * * *.'" Perk v. Euclid (1969), 17 Ohio St.2d 4, 8, 244 N.E.2d 475, 477 (quoting Justice Story in Society for the Propagation of Gospel v. Wheeler [1814], 2 Gall. [U.S.C.C.] 105, 139.
 * * * 5. Mazzuckelli v. Mazzuckelli (Sept. 27, 1995), Hamilton App. No. C-930202, unreported. Rather than adding or subtracting from the rights or duties of either of the parties in this case, the construction given to the decretal order of support merely defines what those rights and duties were intended by the court to be. The construction that the court intended the term "minor" to be subject to any future legislative change in the age of majority does not give retrospective application to the change when it occurs, but, rather, merely applies the order as written. The holding of Nokes
that the 1974 change in the age of majority cannot "in and of itself" alter the express terms of the decretal order is not violated.
 Amendment to a statute which contains no retrospective language operates only prospectively. State ex rel. McGinty v. Cleveland City School Dist. Bd. of Educ. (1998), 81 Ohio St.3d 283. See also, R.C. 1.48.
The issue of whether a statute may constitutionally be applied retroactively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. Upon its face, R.C. 1.48 establishes a threshold analysis which must be utilized prior to inquiry under Section 28, Article II of the Ohio Constitution. Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100.
In Mazzuckelli v. Mazzuckelli (1995), 106 Ohio App.3d 554, the Hamilton County Court of Appeals held that the application of an amended statute establishing parental duty to support child beyond the age of majority so long as the child attend accredited high school to a case where the support obligation arose some thirteen years before statute was amended did not constitute retrospective application of the statute. The court noted at pages 558 and 559 of the court's opinion:
 Under the case law in Ohio, the analysis that pertains to issues of retrospective application of statutes has recently evolved to require a threshold inquiry into whether the General Assembly has specified that a given statute is to be given retroactive effect. In the absence of such a specification, retroactivity is, quite simply, foreclosed, and it is only when the legislature has given its imprimatur to retroactive application that a second issue, one of constitutional dimension, must be addressed: whether the statute in question bears upon substantive rights or is more appropriately construed to be procedural in nature. Warren Cty. Bd. of Commrs. v. Lebanon
(1989), 43 Ohio St.3d 188, 540 N.E.2d 242; Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 522 N.E.2d 489; Bien v. Cincinnati (Sept. 29, 1993), Hamilton App. No. C-920351, unreported, 1993 WL 381206.
 In our view, resort to the newly evolved standards on retroactivity is unnecessary in the instant case because we are persuaded that to apply amended R.C. 3103.03(B) in this context does not give the statute any meaningful retrospective effect. Under the definition we deem appropriate, a statute can be construed as impermissibly retrospective in application only if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed * * *." Perk v. Euclid (1969), 17 Ohio St.2d 4, 8, 46 O.O.2d 60, 62-63, 244 N.E.2d 475, 477 (quoting Justice Story in Society for the Propagation of Gospel v. Wheeler [1814], 2 Gall. [U.S.C.C.] 105, 139).
 Two aspects of the present case are significant to our conclusion that we are not confronted with an instance of impermissible retrospective application. First, at the time the court below was asked to extend the father's support obligation, that obligation had yet to be fully carried out under existing law, and its dimensions as well had yet to be fully determined. Second, as we note infra, at the time of the requested extension, the trial court had yet to relinquish the continuing jurisdiction conferred upon it by R.C. 3105.65 to modify, among other things, any provisions concerning child support. Under these circumstances, it cannot be said, within the accepted sense of retroactivity, that application of amended R.C. 3103.03(B) "create[d] a new obligation, impose[d] a new duty, or attache[d] a new disability" on the father "in respect to transactions or considerations already passed." We hold, therefore, that the court below did not err when it ruled that the support order arising from the separation agreement incorporated into the decree of dissolution should extend beyond Deborah Mazzuckelli's eighteenth birthday. The third assignment of error is, accordingly, not well taken.
 We are persuaded that applying amended R.C. 3103.03(B) in the instant case does not give the statute any meaningful retrospective effect. Although the law in effect at the time the parties entered into their agreement required that Chad be supported until he completed high school, the parties did not specify how long the husband would be obligated to pay child support. The parties left that open-ended, and thus Mrs. Anderson did not have a vested right impaired when the legislation was amended in 1998.
The trial court also determined that appellant had slept on his rights and therefore should be precluded from recovering the overpayment. The trial court noted that appellant had waited to assert his right to the overpayment until many months after his son reached his nineteenth birthday. Courts retain the equitable authority to bar actions where the party has failed to expeditiously assert his rights. Hullett v. Hullett (1984), 45 Ohio St.3d 288. It is said that the doctrine of estoppel is usually applied to cases where the party sought to be estopped was guilty of some negligence or lack of diligence under the principle that if he is guilty thereof he must take the consequences of his own acts which mislead others to act to their injury. Estoppel and Waiver, 43 Ohio Jurisprudence 3d at 73. Estoppel by negligence is said to be an application of the general principle of equity that when one of two innocent persons must suffer a loss, the loss must fall on him whose conduct brought about the situation or placed it within the power of a third person to cause the loss. 43 Ohio Jurisprudence 3d at 79.
There was no evidence presented by appellant that appellee knew that the support payments being sent her by CSEA after October 17, 1998 were not support payments to which she was entitled to apply to the support of her son while he attended high school. We see no abuse of discretion in the trial court's finding that the appellant should be equitably estopped from receiving reimbursement of the support money from appellee. The first assignment of error must be overruled.
In his second assignment, appellant contends the trial court erred in failing to require appellee to repay the child support she received on her son's behalf after he reached his nineteenth birthday since appellee did not appeal the court's order of July 15, 1999 determining the overpayment., Appellant contends that appellee cannot now challenge the propriety of the court's July 15 order finding the overpayment because she did not appeal that order. The appellee agrees the trial court's order of July 15, 1999 established that appellant's child support obligation ended July 15, 1999, but she contends the order was not appealable because the order required the appellant to file a "motion" before she could be required to repay appellant any overpayment.
We agree with the appellee that she was not bound to appeal the July 15 order because it was not a final appealable order until the order denying appellant's motion for repayment was entered by the trial court. The second assignment of error is overruled.
The judgment of the trial court is Affirmed.
 _________________ BROGAN, J.
GRADY, P.J., and YOUNG, J., concur.