OPINION *Page 2 
{¶ 1} This matter is on appeal from the trial court's determination that the consent of the appellant-mother was not necessary for the adoption of her two children by their paternal grandparents, Michael and Kathy Greenwalt. The appellant, Karen Garner, is the biological mother of the children. The biological father, Adam Garner, gave written consent for the adoption and did not appeal. Michael and Kathy Greenwalt are the appellees.
 STATEMENT OF FACTS AND CASE {¶ 2} On February 21, 2007, appellees, Michael and Kathy Greenwalt, filed a petition to adopt their two minor grandchildren, Jasmine Renee Garner (Probate Court Case Number 199321) and Victoria Ragena Garner (Probate Case Number 19322). In the petition, the appellees alleged that the appellant's consent was unnecessary because she had failed, without justifiable cause, to provide for the maintenance and support of the minor children for a period of at least a year immediately preceding the filing of the adoption petition.
 {¶ 3} On August 20, 2007, a hearing on the consent phase of the adoption was held. The issue before the trial court was whether it was necessary for the appellant to consent to the adoption of the children. Both parties were represented by counsel.
 {¶ 4} Kathy Greenwalt testified that she had been married to Michael Greenwalt for 22 years and that she was the mother of Adam Garner and the paternal grandmother of both children. T.2. She testified that Jasmine was six and a half years of age and that Victoria would be four in November. T.3. *Page 3 
 {¶ 5} With regard to Jasmine, Ms. Greenwalt testified that Jasmine had lived in her home "on and off" since Jasmine was born. She testified that a case was filed in juvenile court whereby Jasmine was found to be a dependent and neglected child and that on August 21, 2003, she was awarded legal custody of Jasmine. T.3-4.[1] She testified that she filed the petition for the adoption of Jasmine on August 21, 2007. She stated that for at least one year prior to the filing of the petition, the appellant had failed to provide any support for Jasmine. T.4.
 {¶ 6} With regard to Victoria, Ms. Greenwalt testified that Victoria was very sick when she was born. T.5. She testified that Victoria was born with bronchial pulmonary dysplasia and kidney failure and that Victoria was in the intensive care unit for almost four months following her birth. T.5. She testified that Victoria was released by Children's Services from the hospital into her care. T.5. She testified that, after her release, Victoria was on oxygen. She testified that, within a week, Victoria returned to the hospital for an operation to insert a feeding tube to relieve severe acid reflux. T.5. Ms. Greenwalt testified that a juvenile court case was filed for Victoria and that on April 27, 2004, she was awarded legal custody of Victoria. T.6.[2] She testified that she filed the petition for the adoption of Victoria on August 21, 2007. She stated that for at least one year prior to the filing of the petition, the appellant had failed to provide any support for Victoria. T.7.
 {¶ 7} On cross examination, Ms. Greenwalt testified that the appellant had started calling Jasmine, had had visits with the children at the Greenwalt's house and *Page 4 
had sometimes taken Jasmine out. T.10, 13. She testified that the appellant did not bring things for the children when she came to visit. T.14. She testified that at Christmas the maternal grandmother (Cynthia North) gave the children presents and that the appellant brought the children a stocking full of toys from Wendy's which is the fast-food restaurant where appellant works. T.15. She also testified that Ms. North bought the children a sandbox. T.15. Ms. Greenwalt testified that the appellant would take Jasmine to McDonalds and they would split one happy meal three ways. T.15. Jasmine told Ms. Greenwalt that she would get one nugget and some french fries.[3]
 {¶ 8} Michael Greenwalt testified that he is Adam Garner's stepfather and step-grandfather to the children. T.17. He testified that, prior to the filing of the petition for adoption, the appellant had not provided the children with any monetary support or any in kind contributions such as supplies or food. T.17.
 {¶ 9} Freda Palmer an employee of the Stark County Department of Job and Family Services testified that she is an enforcement supervisor and records custodian for the agency. She testified that her responsibilities include maintaining records for child support payments. T.20. She stated that she is familiar with Jasmine and Victoria and that the appellant has never made any child support payment through the agency. T.21.
 {¶ 10} Appellant, Karen Garner, testified that she is the biological mother of Victoria and Jasmine. T.22-23. She testified that she has been working at Wendy's for four years and that during the period of time in question she was working between 20 and 35 hours a week. T.38. She admitted that she has not provided financial support for the children or given Kathy Greenwalt any money for the children within one year of *Page 5 
the filing of the adoption petition. T.24. She admitted that the Greenwalts provide the children with food and housing on a daily basis and provide transportation to medical appointments. T.28. She testified that she has made several different offers to Kathy Greenwalt to provide the children with school supplies and clothes and was told that they already had supplies. T.32-33. The appellant admitted that when the Greenwalts took Victoria for surgery at Akron Children's Hospital, she was not present. T.29. Specifically, she stated, "I wasn't able to make it at the moment." T.29.
 {¶ 11} The appellant testified that she had taken the children to McDonalds about five times. T.27, 34. She stated that her mother generally paid for the meals because she had no money but that she had reimbursed her mother for part of the meal expenses. T.24, 26, 35.
 {¶ 12} The appellant also testified that she gave the children Christmas presents which included items she purchased from Dollar General. T.24 and 26.She testified that she had purchased two slinkies, a toy makeup box and a couple other "odd ball toys" for the children that she had picked up from work. T.36-37. She testified that her mother purchased a television set for the children because she was in between paychecks. T.37.
 {¶ 13} Cynthia North testified that the appellant is her daughter and that Jasmine and Victoria are her grandchildren. T.39. She testified that she would accompany the appellant on visits with the children. T.39. She testified that sometimes she and her daughter would take Jasmine to McDonalds or to the park. T.39. She testified that when they went to McDonalds usually she would pay for the food and the appellant would pay her back. T.40. She testified that she purchased a television for the children *Page 6 
and that appellant paid for half of the cost after she got her paycheck. T.40. Ms. North identified receipts for several items that she had purchased for the children. T.41. (Karen Garner's Exhibit 3). She stated that initially she paid for the items and that the appellant would pay her back. She testified that "sometimes [she] would be paid back the whole thing, sometimes [she would pay] back half, * * * sometimes she didn't pay me back at all." T.46.
 {¶ 14} At the close of the evidence, the appellant introduced receipts for purchases of school supplies in the amount of $12.87, a receipt for a television set in the amount of $59.62, a receipt for coloring books and crayons in the amount of $7.95 and a receipt for snacks in the amount of $7.75. The appellant also introduced the depositions of the Greenwalts and telephone records.
 {¶ 15} On September 21, 2007, by judgment entry, the trial court found that the appellant had failed, without justifiable cause, to provide maintenance and support for Victoria and Jasmine for a period of one year preceding the filing of the petitions for the adoption of the children. The court further found that the failure to provide support was not justifiable. In light of the foregoing, the trial court held that the mother's consent to the adoption was not required.[4]
 {¶ 16} It is from this order that the appellant appeals setting forth the following assignment of error:
 {¶ 17} "THE TRIAL COURT ERRED IN FINDING THAT THE BIOLOGICAL MOTHER, WITHOUT JUSTIFICATION, FAILED TO SUPPORT, JASMINE RENEE *Page 7 
GARNER, BORN DECEMBER 26, 2000 AND VICTORIA RAGENA GARNER, BORN NOVEMBER 12, 2003, FOR MORE THAN ONE (1) YEAR PRIOR TO THE FILING OF THE PETITION FOR ADOPTION AND THAT HER CONSENT TO ADOPTION WAS NOT NECESSARY."
 {¶ 18} In this assignment of error the appellant argues that the trial court misinterprets R.C. 3107.07(1)(A). Specifically, appellant argues that even minor contributions toward support and maintenance, such as occasional McDonald's meals and small gifts, are sufficient to preserve a parent's right to object or consent to the adoption of his/her child by another.
 {¶ 19} In response, the appellees argue that the appellant failed to establish that she provided any support or maintenance whatsoever for the children. Appellees argue that contributions such as slinky toys and other small gifts were of no value to the children but were rather incidentals and/or minimal gifts that do not constitute support and maintenance. We agree with appellees.
 {¶ 20} R.C. 3107.07(A) sets forth, in part, the requirements for a parent's consent to an adoption. R.C. 3107.07(A) states that a probate court may not grant a petition to adopt a minor child absent the consent of the child's parent. However, the statute further states that the consent of a parent is not required for adoption if the court finds that "the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition" R.C. 3107.07(A). *Page 8 
 {¶ 21} Pursuant to the statute, even when the natural parent has maintained regular communication and visitation with the minor child, the parent's failure to support the child without justifiable cause provides an alternative basis for dispensing with the consent requirement. In re Adoption of Jones (Dec. 29, 1983), Franklin App. No. 83AP748, 1983 WL 3857, citing In re Adoption of McDermitt (1980),63 Ohio St.2d 301, 304, 408 N.E.2d 680.
 {¶ 22} Pursuant to the statute, a petitioner for adoption has the burden of proving by clear and convincing evidence that (1) the natural parent failed to either support or communicate with the child for the requisite one year period and that (2) this failure was without justifiable cause. In re adoption of Bovett (1987), 33 Ohio St. 3d 102,515 N.E.2d 919, paragraph one of the syllabus; In re Adoption ofMasa (1986), 23 Ohio St. 3d 163, 492 N.E.2d 140, paragraph one of syllabus.
 {¶ 23} "The question of whether a natural parent's failure to support his or her child has been proven by the petitioner by clear and convincing evidence to have been without justifiable cause is a determination for the probate court, and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." Bovett at paragraph four of the syllabus. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. In re Adoption ofBreckenridge, Franklin App. No. 03AP-1166, 2004-Ohio-2145, paragraph 10.
 {¶ 24} The relationship between a parent and child is a constitutionally protected liberty interest. See In re Adoption ofZschach (1996), 75 Ohio St. 3d 648, *Page 9 665 N.E.2d 1070. Therefore, any exception to the parental consent requirement for adoption "must be strictly construed so as to protect the right of the natural parents to raise and nurture their children." In re Adoption ofSchoeppner (1976), 46 Ohio St.2d 21, 24, 345 N.E.2d 608.
 {¶ 25} Ohio has long recognized that a biological parent's duty to support his or her children is a "principle of natural law" that is "fundamental in our society". Pretzinger v. Pretzinger (1887),45 Ohio St. 452, 15 N.E. 471; Aharoni v. Michael (1991), 74 Ohio App. 3d 260,598 N.E. 2d 1215. Such a duty of support is not dependent upon the presence or absence of court orders for support. Nokes v. Nokes (1976),47 Ohio St.2d 1, 351 N.E.2d 174. The common law duty to support one's child has been codified in R.C. 3103.03. Id.
 {¶ 26} "Chapter 3107 of the Ohio Revised Code does not define the terms `maintenance' or `support.' Therefore we must afford these terms their plain and ordinary meaning." In re Adoption of B.M.S., Franklin App. No. 07AP-236, 2007-Ohio-5966; R.C. 1.42; Kimble v. Kimble,97 Ohio St.3d 424, 2002-Ohio-6667, 780 N.E.2d 273. "`Maintenance' has been defined as `[financial support given by one person to another.' Black's Law Dictionary (8 Ed. 2004) 973. `Support' has been defined as `[s]ustenance or maintenance; esp., articles such as food and clothing that allow one to live in the degree of comfort to which one is accustomed.'" Id. at 1480, 780 N.E.2d 273.
 {¶ 27} In Gorski v. Myer, this Court reasoned that "[t]he General Assembly chose not to modify the terms with words such as substantially or `regularly,' indicating an intention by the General Assembly to adopt an objective test for analyzing a parent's failure to support."Gorski v. Myer, Stark App. No. 2005CA00033, 2005-Ohio-2604, at *Page 10 
paragraph 17, citing In re: Adoption of Holcomb (1985),18 Ohio St.3d 361, 366, 481 N.E.2d 613. The relevant inquiry is not whether the parent provided support as would be expected, "but whether the parent's failure to support * * * is of such a magnitude as to be the equivalent of abandonment." Gorski, supra at paragraph 14, citing Celestino v.Schneider (1992), 84 Ohio App.3d 192, 196, 616 N.E.2d 581. InCelestino, the Sixth District Court of Appeals held that a minimal $36.00 in support provided by natural father was sufficient to preserve his consent as jurisdictional prerequisite to his child's adoption, and stated that the Sixth District has "previously held that any contribution toward child support, no matter how meager, satisfies the maintenance and support requirements of R.C. 3107.07(A)."Celestino, supra at 196.
 {¶ 28} Appellate courts have different views on what constitutes sufficient maintenance and support. This Court, and the Third, Fourth and Sixth Ohio Appellate Districts have held that a natural parent who provides for a child's needs during visitation has provided sufficient support to avoid a determination that consent is unnecessary for an adoption. In the cases before these districts, the non-consenting parent exercised regular weekly or bi-weekly visitation throughout the relevant one year period. The non-consenting parent also furnished food, shelter and other necessities such as clothing, diapers or shoes for the child to use either during the visitation or at the custodial parent's home. See In re Adoption of Huffman, Mercer App. No. 10-85-4, (Aug. 29, 1986), unreported, 1986 WL 9662; In re Adoption of McNutt (1999),134 Ohio App.3d 822, 732 N.E.2d 470; In re Adoption of Pinkava, Lucas App. No. L-88-034, (Jan. 13, 1989) 1989 WL 1614; Gorski v. Myer, supra. The Second District has held that meager contributions to a child's support and maintenance are enough to require a *Page 11 
parents' consent, but mere gifts and incidentals do not. In re AdoptionCampbell, Montgomery App. No. 18042, (April 14, 2000), unreported. Some courts have found that even a "meager" amount of support is sufficient to avoid a finding that the parent's consent is not required.Celestino, supra, and Vecchi v. Thomas (1990), 67 Ohio App.3d 688,588 N.E.2d 186 (holding that a father's payment of $130.00 to the child support enforcement agency was sufficient).
 {¶ 29} Other Ohio courts have held that merely supplying a child with gifts and other nonessential items is not considered support and maintenance. In re Adoption of Strawser (1987), 36 Ohio App.3d 232,522 N.E.2d 1105, held that the purchase of toys and clothes with a value of $133.00 was insufficient to fulfill the duty of support where the items had no real value to the child because the child already had sufficient clothes and toys. In re Adoption of Breckenridge, Franklin App. No. 03AP-1166, 2004-Ohio-2145, held that Christmas gifts which included a backpack and bike helmet were insufficient to fulfill the duty of support when the gifts were not requested and they did not provide any real value toward support and maintenance. In re Adoption ofB.M.S., supra, held that when the children were being afforded sufficient maintenance and support by the custodial parent, the provision of nonessential gifts, meals and entertainment by the non-consenting parent during visits with the children, when the non-consenting parent earned an income of $65,000.00 to $70,000.00 during the relevant period and refused to provide health insurance and child-support, was insufficient to establish maintenance and support.In re Adoption of Bovett, supra, held that making one or two child support payments was not sufficient to establish maintenance and support. *Page 12 
 {¶ 30} Appellant urges this Court to apply the holding of In reAdoption of Holcomb to the issue of maintenance and support in this case. In Holcomb, the Supreme Court determined that, under the provision of R.C. 3107.07(A), a parent forfeits his or her right to object to an adoption if the parent has failed to communicate with the child. The court held that failure to communicate could only be established when there is a complete absence of communication between a non-consenting parent and their child. In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 481 N.E.2d 613. Appellant essentially urges this Court to find that a parent only forfeits his or her right to object to an adoption if the parent has not provided any maintenance and/or support for the child for one year prior to the filing of the adoption petition.
 {¶ 31} We decline to adopt the reasoning of Holcomb to the situation sub judice. Holcomb deals with a failure to communicate rather than a failure to provide for the maintenance and support of a minor child. The reasoning that any meager amount of communication, such as a phone call, is a communication makes sense only if a phone call equals a communication. Appellant argues that, in the case sub judice, the occasional McDonald's meal and some small toys equal the provision of maintenance and support. We find these items do not equate to the provision of maintenance and support.
 {¶ 32} Appellant also urges this Court to follow its prior decision inGorski v. Myer, supra, but that case is distinguishable from the case sub judice. In Gorski v. Myer the father saw the child every other weekend and provided the child with food, clothing and toys. The case sub judice is also distinguishable from Celestino, supra, from the Sixth District which held that a $36.00 support payment was sufficient to qualify as the *Page 13 
provision of support and maintenance. The Celestino court stated that the meager payment was, in fact, child support, "not an unnecessary gift" and "not some minimal expense made in connection with visitation."Celestino, supra at p. 197.
 {¶ 33} In the case sub judice, we find that the evidence failed to establish that the appellant provided support and maintenance for Jasmine and Victoria. The evidence established that the appellant had been an employee of Wendy's restaurant for four years and had worked between 20 to 40 hours a week during the year preceding the petition for adoption. Pay stubs showed that the appellant earned an average of approximately $400.00 every two weeks. Although the appellant had some income, the Greenwalts provided the children with food, clothing, educational necessities and medical attention. Appellant visited with the children five to ten times in the year preceding the filing of the petition. The appellant and her mother occasionally took Jasmine to McDonald's for meals. It is unclear how many of these times the appellant rather than her mother actually provided the money for the meals. The appellant also purchased some gifts for the children including a stocking of Wendy's toys, two slinkies, a toy makeup box and a couple other "odd ball toys". Otherwise, it appears that it was Cynthia North who purchased Christmas gifts, a sandbox and a television for the children. Finally, the receipts introduced into evidence by the appellant were for items purchased for the children by their maternal grandmother in the amount of $88.19.
 {¶ 34} The Greenwalts never received any monetary support or in kind contributions from Karen Garner for Jasmine or Victoria. T. at 16, 17. The trial court found Karen Garner's testimony was not credible as to her claim that she offered to *Page 14 
provide the Greenwalts with things for the children, such as school supplies, clothing and shoes.
 {¶ 35} We find that the trial court's determination that the appellant "did not provide regular contributions to help pay for food, clothing, and shelter for the children" and that "the purchases made for the children were in the nature of gifts rather than maintenance and support," was not error. Accordingly, the trial court's decision that the "mother's consent to the adoption is not required because she failed without justifiable cause to provide for the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the petition. . ." is a correct legal decision. For these reasons, the appellant's assignment of error is not well taken and is hereby overruled.
 {¶ 36} The judgment of the Stark County Court of Common Pleas, Probate Court, is hereby affirmed.
Edwards, J. and Delaney, J. concur Farmer, P.J. dissents
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Probate Court, is affirmed. Costs assessed to appellant.
[1] Stark County Court of Common Pleas, Juvenile Court Case Number JU126355 (Karen Garner's Exhibit 30).
[2] Stark County Court of Common Pleas, Juvenile Court Case Number JU126355 (Karen Garner's Exhibit 30).
[3] Victoria does not go out to eat because she is on a feeding tube and refuses to eat by mouth.
[4] Appellant is appealing the probate court's decision in the "consent" phase. Such determinations are final appealable orders, despite the fact that the probate court has not yet proceeded to the "best interest" phase. In re Adoption of Greer (1994),70 Ohio St. 3d 293, 638 N.E. 2d 999, paragraph one of the syllabus. *Page 15