[Cite as *In re Adoption of C.J.T.*, 2021-Ohio-4525.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| ADOPTION OF C.J.T. | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, J. |
| | : | |
| | : | |
| | : | |
| | : | Case No. CT2021-0033 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Muskingum County
Court of Common Pleas, Probate
Division, Case No. 2020-4008

JUDGMENT: Dismissed

DATE OF JUDGMENT: December 22, 2021

APPEARANCES:

For Plaintiff-Appellee Robert Todd          For Defendant-Appellant Scottie Holloway

MILES D. FRIES                               ANDREW E. RUSS
Gottlieb, Johnston, Beam & Dal Ponte         Andrew Russ Law LLC
320 Main Street. P.O. Box 190                P.O. Box 520
Zanesville, Ohio 43702-0190                  Pickerington, Ohio 43147-0520

*Baldwin, P.J.*

**{¶1}**   Appellant, Scott Holloway, appeals from the decision of the Muskingum County Court of Common Pleas, Probate Division, finding that his consent was not necessary for the adoption of his son, C.T., by the appellee, Robert Todd.

### STATEMENT OF FACTS AND THE CASE

**{¶2}**   Robert Todd filed a petition with the Probate Division of the Muskingum County Court of Common Pleas on February 24, 2020, seeking to adopt C.T., the biological son of his wife, Alisa Todd, and appellant, Scottie Holloway.  Within the petition, Todd claimed that Holloway's consent to the adoption was unnecessary because Holloway failed to have more than de minimis contact with C.T. and failed to provide support for C.T. for the twelve months preceding the filing of the petition.  Holloway filed an objection to the petition contending that his consent was necessary.  The matter was set for a hearing when Holloway requested that the trial be bifurcated with the consent issue and the best interest to occur on separate dates and the conduct of the best interest hearing contingent upon the outcome of the consent hearing. The trial court agreed and the issue of consent was presented to the court on June 25, 2020.

**{¶3}**   Debbie Tom, Case Manager Supervisor for Muskingum County Job and Family Services, Child Support Division was called to testify by Todd regarding the records of Holloway's support payments from February 2019 to February 2020. She explained that Holloway was obligated to pay $138.75 per month, comprised of current support of $113.36, a monthly payment toward arrearage of $22.67 and an administrative fee of $2.72.  She reviewed the payment record and stated that payments toward support were made from February 2019 until August 2019, but she did not describe the amount

of the payment made. She testified that no payments were made from September 2019 to January 2020 and that a payment of $36.45 was made in February 2020. The total unpaid balance on February 29, 2020 was $910.50.

**{¶4}** Tom noted that payments made after the filing of the contempt action were not in her files and, during cross examination evidence was presented that suggested that the current amount due was approximately $140.00.

**{¶5}** Todd did not present any additional evidence regarding support and shifted his focus to whether Holloway had more than de minimis contact with C.T.

**{¶6}** Alison Todd, C.T.'s mother, claimed that she supported Holloway's relationship with C.T. and did nothing to interfere with contact between father and son, but noted that Holloway made no effort to establish and maintain a relationship. She and C.T. had lived at the same address for over eight years and she has had the same phone number for ten to fifteen years and Holloway has infrequently called or sent text messages, but never visited in person.

**{¶7}** Alison Todd reviewed seventeen printed text messages she received from Holloway beginning on March 2, 2019 and ending January 17, 2020 and confirmed that these texts were the only contact she had with Holloway during that period of time.  One was a photo of a tombstone with no explanation and another wished Alison Todd a Happy Mother's Day.  Several asked about what C.T. was doing or whether he had a game scheduled for whatever sport was in season. Holloway also sent texts requesting game schedules and Alison Todd claimed that she provided them.  One message referred to a telephone call with C.T. during his birthday on June 30, 2019 but Alison did not recall if the call occurred and the text message does not have that information.

{¶8}   None of the messages were directed to C.T. and none sought a response from C.T.   None of the message requested a face to face meeting or overnight visit. Alison Todd never asked Holloway to stop calling and did not act to keep C.T. away from Holloway. She confirmed that C.T. has never spent a night with Holloway and that Holloway has not taken any steps to have court ordered visitation schedule imposed.  She attended basketball and other sports when C.T. played and did not recall seeing Holloway present and was not aware of any contact between C.T. and Holloway for the twelve-month period prior to the filing of the petition. She also confirmed that C.T. received no gifts, birthday cards, or holiday cards from Holloway.

{¶9}   Robert Todd denied keeping C.T. from Holloway or interfering in any attempts of Holloway to see C.T. He recalled transporting C.T. to see Holloway on several occasions prior to February 2019.  Those visits slowly declined and stopped, but not as a result of Todd's efforts.

{¶10}  Robert Todd described the events at a basketball game that occurred on March 2, 2019.  Todd brought C.T. to the game and never let C.T. from his sight during the game.  He saw Scottie Holloway at the game, but he was confident that Holloway and C.T. had no physical contact or face to face contact during the game.

{¶11}  Robert Todd also responded to an allegation that Holloway called C.T. during his birthday in 2019.  Any call from Holloway would have been to either Alison or Robert Todd's phone as C.T. has no cell phone.  Neither Alison nor Robert Todd recalled such a telephone call.

{¶12} C.T., ten years old at the time of the hearing, revealed that he knows his father, Holloway, but did not see him frequently. He described his basketball playing experience and whether he had ever seen his father at a game:

Q. All right. And do you remember ever seeing Scottie at that game?

A. No.

Q. Did you talk to Scottie at that game?

A. No.

Q. Did you give Scottie a hug at that game?

A. No.

Q. Did you see anybody else other than Bobby that was with you at that game that you remember?

A. No.

(Trial Transcript, Consent Hearing, June 25, 2020, p. 226, lines 13-22).

{¶13} C.T. also directly denied having any telephone contact with Holloway during the year prior to the filing of the petition:

Q. Okay. All right. Do you remember ever talking to Scottie over the telephone last year?

A. No.

MR. BENBOW: Objection as to last year.

Q. 2019?

A. No.

Q. How about 2020?

A. No.

Q. Have you had any -- do you have your own cell phone?

A. No.

Q. Okay. Do you ever text message on your mother's phone?

A. No.

(Trial Transcript, Consent Hearing, June 25, 2020, p. 228, lines 9-22).

**{¶14}** C.T. concluded his testimony by claiming that he had no memory of any contact with Holloway from the beginning of January of 2019 through the end of February 2020.

**{¶15}** Holloway responded to Todd's evidence by insisting that he and his daughter had a ten minute conversation with C.T. on his birthday on June 30, 2019, that he appeared at C.T.'s basketball game on March 2, 2019 and not only talked with his son, but also hugged him. He identified several pictures he took during his visit to the game, all while C.T. was playing but none of C.T. with him.

**{¶16}** Holloway reviewed the text messages identified by Alison Todd, contending that he had intended them to be messages to C.T. or requests for information that would allow him to contact C.T. He described Alison Todd's response as uncooperative and unresponsive, though Holloway did not request any contact with C.T. in any of the messages. He conceded that the one time that he directly requested to see C.T. on May 22, 2020[1]. Alison Todd called him and he was able to see his son.

---

[1] This visit was outside the relevant statutory time period, but was offered by Holloway and accepted by the trial court only with regard to the issue of interference with Holloway's ability to have contact with C.T.

{¶17} Holloway tried to claim that he did not have a chance to ask to see C.T. through the text messages that Alison Todd identified, but he conceded that he did not ask and was not prevented from asking.

{¶18} He excused his failure to send a card or a gift to C.T. by explaining that he did not know the address, though he conceded that he knew where C.T. lived with the Todds. He also admitted that from April 2019 to July 2019 he was unable to attend any of C.T.'s sporting events because he was on house arrest. He also revealed that he had lost his car as a result of a traffic offense and had no transportation to go to the school or fieldhouse to obtain C.T.'s schedule or to attend his games.

{¶19} Markika Goins testified on behalf of Holloway and confirmed that he attended one of C.T.'s basketball games, the March 2, 2019 game described by Holloway and Robert Todd. Goins is Todd's sister-in-law and one of her children played basketball in the same league as C.T. She recalled that Holloway was at this game and that he talked with C.T. before and after the game and gave C.T. a hug after the game. She also claimed that Holloway attended a second game, talked with C.T. and gave him a hug. Holloway contradicted Goins testimony by stating that he attended only one game.

{¶20} The parties submitted proposed findings of fact and conclusions of law and, on November 25, 2020, the trial court issued a decision on the issue of consent. The trial court explicitly found that Todd had not established that Holloway failed to provide support for the year prior to the filing of the petition, but concluded that Holloway's consent to the adoption was unnecessary as a result of his failure to have more than de minimis contact with C.T. within that twelve-month period.

Petitioner had failed to establish by clear and convincing evidence that the Respondent-Father failed without justifiable cause to provide support of the minor child during the relevant one year time period. Petitioner has established by clear and convincing evidence that the Respondent-Father failed without justifiable cause to provide more than de minimis contact with the minor child for a period of at least one year immediately preceding the filing of the February 24, 2020 Petition. Therefore, the consent of the Respondent-Father to this proposed adoption is not necessary for the reasons outlined below.

(Entry, Nov. 25, 2020, p. 7).

{¶21} The trial court concluded by ordering "that the consent of the respondent-father, for the adoption of the minor child is not necessary." *Id.,* p. 8. The trial court subsequently found that the adoption was in C.T.'s best interest after a hearing on that issue and approved the adoption.

{¶22} Holloway filed a notice of appeal and submitted one assignment of error:

{¶23} "I. THE PROBATE COURT ERRED AS APPELLANT'S CONSENT WAS NECESSARY AND APPELLANT DID NOT GIVE HIS CONSENT. THEREFORE, THE PROBATE COURT LACKED JURISDICTION AND THE PETITION SHOULD HAVE BEEN DISMISSED."

## JURISDICTION

{¶24} Before addressing the merits, we must first address the threshold issue of whether the Notice of Appeal was timely filed. Even if a party does not raise the issue,

this court must address, sua sponte, whether there is a final appealable order ripe for review. *State ex rel. White vs. Cuyahoga Metro. Hous. Aut.*, 79 Ohio St.3d 543, 544, 1997-Ohio-366, 684 N.E.2d 72. An appeal as of right may be taken by the filing of a timely notice of appeal with the clerk of the trial court in which the judgment was entered. App.R. 3(A). The only jurisdictional requirement for an appeal as of right is the filing of the notice of appeal in a timely manner. App.R. 4(A) states:

{¶25}  A party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day rule period in Rule 58(B) of the Ohio Rules of Civil Procedure.

{¶26} The filing of a timely notice of appeal is a prerequisite to establishing jurisdiction in a court of appeals. Therefore, while in the general sense, this court has jurisdiction to hear appeals in adoption cases, that jurisdiction must be invoked by the timely filing of a notice of appeal. Failure to file a timely notice of appeal under App.R 4(A) is a jurisdictional defect. *State ex rel. Pendell v. Adams Cty. Bd. of Elections* (1988), 40 Ohio St.3d 58, 60, 531 N.E.2d 713 as quoted in *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶ 17.

{¶27} The trial court journalized its order finding that Holloway's consent was unnecessary on November 25, 2020 and directed the clerk to serve a copy of the entry on all parties.  "Such determinations are final appealable orders, despite the fact that the probate court has not yet proceeded to the 'best interest' phase." *In re Adoption of Greer* (1994), 70 Ohio St.3d 293, 638 N.E.2d 999, paragraph one of the syllabus as quoted in *Garner v. Greenwalt,* 5th Dist. Stark No. 2007 CA 00296, 2008-Ohio-5963, fn 1.  *Accord*

*In re Adoption of N.T.R.,* 10th Dist. Franklin No. 15AP-955, 2016-Ohio-3427, fn 1. (A trial court's finding pursuant to R.C. 3107.07 that the consent to an adoption of a party described in R.C. 3107.06 is not required is a final appealable order.)

**{¶28}** The thirtieth day after November 25, 2020 was Friday, December 25, 2020 a holiday, so the deadline for filing the appeal was the following business day, December 28, 2020. Holloway moved for reconsideration on December 10, 2020, but did not file a notice of appeal until July 6, 2021 well past the deadline. The Supreme Court of Ohio has held that a request for reconsideration of a final judgment at the trial court level is a nullity, as is any judgment or final order resulting from such a motion. *State ex rel. Pendell v. Adams Cty. Bd. of Elections,* 40 Ohio St.3d 58, 60, 531 N.E.2d 713, 715(1988), citing *Pitts v. Dept. of Transp.,* 67 Ohio St.2d 378, 381, 423 N.E.2d 1105(1981). Such a motion cannot be used to extend the time for filing a notice of appeal. See *Kauder v. Kauder*, 38 Ohio St.2d 265, 313 N.E.2d 797(1974).

**{¶29}** While Holloway is entitled to a right of appeal, that right to appeal expired when he failed to file a notice of appeal within the time required by App.R. 4(A). Therefore, this court has no jurisdiction to entertain an appeal as of right from the trial court's finding that his consent was unnecessary. And, because Holloway has limited his appeal to an issue which we have no jurisdiction to review, this appeal must be dismissed.

**{¶30}** For the reasons set forth above, this appeal is dismissed.

By: Baldwin P. J.

Gwin, J. and

Wise, Earle, J. concur.